Joan PROCITO, Petitioner

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 2007.
Decided March 17, 2008.

Katie R. Eyer, Philadelphia, for petitioner.

Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and SMITH–RIBNER, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Joan Procito petitions for review of an order of the Unemployment Compensation Board of Review (Board) that affirmed the decision of a Referee to deny Procito's request for benefits under Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides that a claimant is ineligible for benefits for any week in which his or her unemployment is due to voluntarily leaving work without a necessitous and compelling cause. Procito questions whether the Board erred in its construction of Section 402(b) as categorically excluding same-sex families; whether its construction violated the Equal Protection and Due Process Clauses of the Pennsylvania Constitution; and whether Procito was entitled to benefits if proper legal standards were applied. She additionally, or alternatively, questions whether the Board erred by failing to remand for further proceedings under 34 Pa.Code § 101.104(c).

I

■■■ After a hearing at which Procito and her domestic partner participated by telephone from Florida, the Referee issued a decision finding that Procito worked as a full-time financial manager and that she voluntarily resigned her job to follow her domestic partner to Florida because Procito was not financially able to maintain two separate households in two states. Her domestic partner moved to Florida to be near her son, who has a learning disability, and to seek a less stressful environment. The Referee stated that in order to receive benefits under the Law an individual must be legally married and that a domestic partner is not recognized within the definition of Section 402(b) of the Law. The Referee ruled that Procito had not proved that her voluntary separation was due to a necessitous and compelling cause. On review, the Board concluded that the Referee's decision was proper under the Law, adopted and incorporated his findings and conclusions, denied Procito's request for a remand and determined that she left her employment for personal reasons that were not necessitous and compelling under the Law.[1]

---

1. The Court's review is to determine whether there was a constitutional violation or an error of law, whether any practice or procedure of the Board was not followed and whether necessary findings of fact are supported by substantial evidence. *Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169 (Pa.Cmwlth.2007). In unemployment compensation proceedings, the Board is the ultimate fact finder, and it is empowered to resolve all conflicts in the evidence and to determine the credibility of witnesses. *Brannigan v. Unemployment Compensation Board of Review*, 887 A.2d 841 (Pa.Cmwlth.2005).

Procito first argues that the Referee and the Board articulated only one reason for denying benefits, *i.e.*, that Procito was not married to her life partner. Under Sections 1102, *as amended*, and 1704 of the Marriage Law, 23 Pa.C.S. §§ 1102 and 1704, however, same-sex couples are categorically prohibited from marrying or from having a marriage performed elsewhere recognized as valid in Pennsylvania. She notes, nonetheless, that the courts have recognized a need to make individualized determinations as to whether claimants had a necessitous and compelling cause for leaving their employment, citing cases including *Beachem v. Unemployment Compensation Board of Review*, 760 A.2d 68 (Pa.Cmwlth.2000) (approving benefits where father left his job in the South to move to Pennsylvania to provide needed emotional support to his troubled eleven-year-old son).

Procito maintains that the Board failed to make an individualized determination by holding that she was categorically prohibited from qualifying for benefits by virtue of her unmarried status. In addition, the Board appeared to apply precedent holding that unmarried heterosexual couples did not qualify for compensation under Section 402(b) of the Law to the context of unmarried same-sex couples. She refers to *Nimitz v. Unemployment Compensation Board of Review*, 699 A.2d 822 (Pa.Cmwlth.1997) (refusing to apply the "following the spouse" doctrine because there was no marriage, where a woman and child left to join a roommate or paramour who was transferred), and to *Kurtz v. Unemployment Compensation Board of Review*, 101 Pa.Cmwlth. 299, 516 A.2d 410 (1986) (refusing to apply the doctrine where there was no "family unit" because a woman left her job shortly before her marriage and, in any event, made no showing that circumstances required making a home elsewhere). Procito submits that the assumption that no family unit exists in the absence of marriage is simply erroneous in the context of same-sex couples, who may have true "family units" with all proper indicia.[2]

Extending *Nimitz* and *Kurtz* to same-sex families would violate the Equal Protection Clauses of the Pennsylvania Constitution, Article I, Sections 1 ("All men are born equally free and independent ...") and 26 ("Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right."). A facially discriminatory action such as the exclusion of unemployment benefits for same-sex families must be at least rationally related to some legitimate governmental purpose. *See Kelley v. State Employees' Retirement Board*, 593 Pa. 487, 932 A.2d 61 (2007), *cert. denied*, — U.S. —, 128 S.Ct. 1260, 170 L.Ed.2d 69 (2008). The policy of the Law is to provide benefits to employees whose job is terminated through no fault of their own. *See* Section 3 of the Law, 43 P.S. § 752; *Savage Unemployment Compensation Case*, 401 Pa. 501, 165 A.2d 374 (1960). Moreover, Pennsylvania's public policy does not favor the general non-recognition of same-sex relationships. *See Devlin v. City of Philadelphia*, 580 Pa. 564, 862 A.2d

---

**2.** Procito points out that other courts have recognized in comparable contexts that the prohibition on marriage fundamentally distinguishes cases involving unmarried heterosexual and same-sex couples. She cites, among others, *Alaska Civil Liberties Union v. Alaska*, 122 P.3d 781 (Alaska 2005) (recognizing this distinction and holding that "spousal limitations" in state and local programs such as employee life and health insurance and death benefits could not survive even minimum scrutiny under Alaska's Equal Protection Clause and were invalid).

1234 (2004) (upholding validity of local ordinance requiring certain employers to provide employee benefits to employees' life partners on the same basis as those offered to employees' dependents, while emphasizing that life partnership is not the functional equivalent of a "marriage").[3]

█ Procito states that she left her job for a necessitous and compelling cause under the general standard. The Court repeated in *Brown v. Unemployment Compensation Board of Review*, 780 A.2d 885, 888 (Pa.Cmwlth.2001), the general standard to be met for showing necessitous and compelling cause: the claimant must establish that "circumstances existed which produced real and substantial pressure to terminate the claimant's employment; like circumstances would compel a reasonable person to act in the same manner; the claimant acted with ordinary common sense; and the claimant made a reasonable effort to preserve his or her employment." *See also Beachem.*

In *Glen Mills Schools v. Unemployment Compensation Board of Review*, 665 A.2d 561 (Pa.Cmwlth.1995), the Court stated the standard to show necessitous and compelling cause for leaving employment to follow a spouse: (1) the spouse elected to move for reasons beyond his or her control, and the decision to move was reasonable and made in good faith, and (2) the couple would face an economic hardship in maintaining two residences or the move has resulted in an insurmountable commuting problem. In her petitions for appeal, Procito elaborated that her partner's son has special needs and that he was starting college in the fall. In *Beachem* the Court recognized that providing emotional support for a child may be a compelling reason for a parent to relocate. Also, Procito satisfies the condition of showing economic hardship in maintaining two residences or an insurmountable commuting problem.

In the alternative, Procito argues that the Board should have remanded her case for further factual development. Under 34 Pa.Code § 101.104(c) the Board should remand whenever the appeal involves a material point on which the record below is silent or incomplete or appears to be erroneous or where it appears that there may have been a denial of a fair hearing. A Referee will be found to have denied a fair hearing to an unrepresented party where the Referee failed to "advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of [the tribunal's] official duties." 34 Pa.Code § 101.21(a). This includes assisting *pro se* claimants in developing the facts necessary for a decision. *Lewis v. Unemployment Compensation Board of Review*, 814 A.2d 829 (Pa.Cmwlth.2003). Procito maintains that the Referee did not assist but in fact obstructed Procito's efforts by stating that the Referee was "not concerned with" facts Procito was attempting to develop, Notes of Testimony (N.T.) p. 6, and that the Referee "wasn't going to

---

**3.** Similarly, Procito argues that extending *Nimitz* and *Kurtz* to same-sex families would violate the Due Process Clauses of Article I, Sections 1 and 11 of the Pennsylvania Constitution. She argues that adopting a construction of Section 402(b) of the Law that categorically excludes same-sex couples from being able to establish the "necessitous and compelling" nature of their reasons for leaving employment would create an "irrebuttable pre-sumption," which would deprive them of the "meaningful opportunity to be heard" guaranteed by Due Process. *See Department of Transportation,. Bureau of Driver Licensing v. Clayton*, 546 Pa. 342, 684 A.2d 1060 (1996) (holding that one-year license suspension based on single epileptic seizure, without opportunity to present evidence of fitness, created irrebuttable presumption in violation of due process rights).

get into" an issue that Procito was discussing. *Id.* p. 7. The Referee advised that he was not there to make new law and failed to explore the nature of the relationship.

The Board first argues that it properly ruled that Procito was ineligible for benefits under the following the spouse doctrine because she was not legally married to her domestic partner. In multiple cases since the doctrine was adopted in *Bliley Elec. Co. v. Unemployment Compensation Board of Review,* 158 Pa.Super. 548, 45 A.2d 898 (1946), the courts have consistently ruled that the doctrine applies only to legally married couples. Most recently this Court restated that proposition in *Nimitz,* which did not turn on a finding of no "family unit" but rather on a finding of no marriage. The Board states that it properly complied with recent legislative intent as expressed in Section 1704 of the Marriage Law not to take an expansive approach to marriage. It challenges Procito's characterization of *Devlin,* arguing that the Supreme Court held that municipalities may confer limited benefits upon same-sex couples that do not begin to reflect the rights and obligations of marriage.

The Board also disputes the argument that it violated equal protection by applying the *Nimitz* and *Kurtz* precedent to same-sex couples. In *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.),* 584 Pa. 309, 883 A.2d 518 (2005), the Supreme Court stated that legislative classifications are permissible if they are reasonable rather than arbitrary and bear a relationship to the object of the legislation. The rational basis test is properly employed in an equal protection analysis of

social legislation. *Id.* As in *Bievenour v. Unemployment Compensation Board of Review,* 42 Pa.Cmwlth. 616, 401 A.2d 594 (1979), the state has a legitimate interest in protecting the limited assets of the Unemployment Compensation Fund and the prohibition advances that interest as well as furthering administrative convenience and finality. Procito was afforded due process in that she received notice and an opportunity to be heard through established adjudicatory procedures.

With regard to the denial of a remand, the Board notes that although 34 Pa.Code § 101.21(a) requires rendering assistance to an uncounseled claimant, a referee should not become a claimant's advocate. The Court will reverse a decision to grant or to deny remand only for an abuse of discretion. *Fisher v. Unemployment Compensation Board of Review,* 696 A.2d 895 (Pa.Cmwlth.1997). The Referee questioned Procito about her reasons for quitting and gave her the opportunity to call and to question her witness. Testimony and proposed testimony about why her partner quit her job was irrelevant. Finally, Procito would not be entitled to benefits even if the following the spouse doctrine were applied because the necessity to relocate must be caused by circumstances beyond the control of the spouse and must not be a matter of personal preference. A personal preference is not necessary or compelling. *Hammond v. Unemployment Compensation Board of Review,* 131 Pa. Cmwlth. 166, 569 A.2d 1013 (1990) (holding that wife's move to Oregon was a matter of personal preference, and husband's leaving work and following to preserve the family was not for necessitous and compelling cause).[4]

4. In a reply brief Procito asserts that absence of marriage was the sole reason for the Board's decision. She states that the text of Section 402(b) of the Law does not mention marital status of a claimant, and Section 1704

of the Marriage Law does not apply because Procito and her partner are not seeking recognition of a marriage. After restating equal protection and due process arguments, she contends that the Board made no alternate

## II

Several standard principles govern the Court's disposition of this case. First, the burden of proof is on a claimant who voluntarily terminates employment to prove that the termination was for a necessitous and compelling cause, and whether the claimant has such cause is a question of law subject to review by the Court. *Johnson v. Unemployment Compensation Board of Review,* 869 A.2d 1095 (Pa. Cmwlth.2005). If an employer fails to offer evidence regarding availability of continuing work, for example, the claimant is not automatically granted benefits because the claimant still must establish necessitous and compelling cause. *Id.* Second, when faced with a case raising constitutional and non-constitutional grounds, a court must decide the matter on non-constitutional grounds and avoid constitutional questions if possible. *Dauphin County Social Services for Children and Youth v. Department of Public Welfare,* 855 A.2d 159 (Pa.Cmwlth.2004).

Based on the foregoing principles, the Court must reach the question of whether the Board unconstitutionally denied benefits to Procito based upon the absence of a marriage only if, assuming that the following the spouse doctrine applies, Procito otherwise meets its requirements. Moreover, the rule is firmly established that this Court may affirm the tribunal below on different grounds if the Court agrees with the result reached below. *See City of Philadelphia v. Frater-*

*nal Order of Police, Lodge No. 5,* 777 A.2d 1206 (Pa.Cmwlth.2001).

Under *Glen Mills Schools,* Hammond and numerous other cases, in a following the spouse case the reason for the spouse's relocation must be beyond the spouse's control and not a matter of personal preference. In this case, as the Referee correctly perceived, the circumstances of Procito's partner's separation from her employment are irrelevant. That is the topic as to which the Referee expressed no interest, and his comments did not obstruct presentation of relevant evidence. The case of whether the partner had necessitous and compelling cause to quit is not before the Court, and the mere fact of her separation from employment in Pennsylvania did not constitute reason beyond her control to move to Florida. Once the partner separated from her job, she decided to move to Florida to seek work in a less stressful environment and to be near her son. These admitted facts show that the partner did not originally decide to leave work and move to Florida because the son needed her, and Procito offered no such proof.

Procito testified that the main reason her partner left her job was the ongoing stress, and they then decided to coordinate moving to Florida to a less stressful environment "and as an additional reason" to be closer to the son. N.T. p. 10. The son, however, was an adult starting at a college of his choice. This is not a case such as *Beachem* where a young son's behavioral problems had been shown to be improved

holding, when in fact the Board did determine that Procito failed to prove that she quit due to a necessitous and compelling cause. She asserts, as well, that the Court should conclude that any arguments concerning the adequacy of the reasons for Procito's partner's relocation were waived by virtue of the employer's failure to raise the issue. She cites *Wing v. Unemployment Compensation*

*Board of Review,* 496 Pa. 113, 436 A.2d 179 (1981) (holding that an employer's theory of termination for willful misconduct rather than voluntary quit, raised for the first time before the Commonwealth Court, was waived). Procito's argument lacks merit as it is her burden to prove this point; it is not something that the employer may waive.

markedly by his father's presence. Procito's partner left her job primarily because of ongoing stress, and she and Procito decided to move to a less stressful environment in Florida and to be closer to the partner's son who was to attend school there. The partner's decision to relocate to Florida was a matter of personal preference, which would preclude a determination by the Board or this Court that Procito had a necessitous and compelling cause to follow. *Hammond.*

The Court's review establishes that Procito simply failed to meet her burden to prove that she terminated her job for a necessitous and compelling cause, *i.e.*, that existing circumstances produced real and substantial pressure to quit, that like circumstances would compel a reasonable person to do the same, that she acted with ordinary common sense and that she made a reasonable effort to preserve her job. *Brown.* As a consequence, and based on this record, the Court need not address any constitutional issues that Procito raised inasmuch as this case certainly can be decided on non-constitutional grounds. *Dauphin County Social Services for Children and Youth.* The facts are straightforward, and the law is clear. In addition, the Court finds no merit to Procito's argument that the Board erred in denying a remand when there is no indication in the record that the Board abused its discretion in this regard. *Fisher.* The Referee allowed Procito to testify and otherwise performed the duties required of the Referee under 34 Pa.Code § 101.21. Under these circumstances, the Court must affirm the order of the Board.

### ORDER

AND NOW, this 17th day of March, 2008, the decision of the Unemployment Compensation Board of Review is affirmed.

CONCURRING OPINION BY Judge PELLEGRINI.

Both the majority and Judge Friedman's dissenting opinion discuss at length the "follow the spouse" doctrine, while, at oral argument, counsel for Joan Procito (Claimant) only argued that her domestic circumstances were such that she had a necessitous and compelling reason to quit work. The Board does not disagree with that proposition, stating that she could have been eligible for benefits under Section 402(b) of the Act, but she had not set forth evidence under any theory that would have allowed for recovery. Because I agree with the Board that she has not established that she had a right to recovery, under any theory, [including the "follow the spouse" doctrine], I concur with the majority that the Claimant is ineligible for unemployment compensation benefits.

The facts here are not in dispute. Claimant worked as a full-time financial manager for Cushman and Wakefield of Pennsylvania (Employer) making $66 per hour. Claimant resigned on July 31, 2006 to follow her domestic partner to Florida. Claimant's domestic partner found her job in Pennsylvania to be stressful and decided to relocate to Florida to be near her adult son, who was enrolled in college but had a learning disability. Claimant testified that she resigned her position and relocated to Florida because she was not financially able to maintain two separate households in two states.

In *Wallace v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 342, 393 A.2d 43 (1978), we struck down an absolute prohibition contained in the Unemployment Compensation Act prohibiting a claimant who voluntarily received benefits because of the marital, filial or domestic reasons, stating that:

Because the absolute disqualification by Section 402(b)(2)(II)[1] of all unemployment compensation claimants who voluntarily terminate their employment for marital, filial or domestic reasons bears no rational relationship to a legitimate legislative purpose, it violates the Equal Protection Clause of the United States Constitution; because it denies such claimants individualized determinations of their entitlement to a significant property right when the administrative inconvenience of providing such determinations is negligible, it violates the Due Process Clause.

393 A.2d at 47.

Once the absolute prohibition against awarding benefits for marital, filial or domestic reasons was found to be unconstitutional, unemployment benefits could be awarded to care for a child, to follow a family member or other member of a household that moved or any other domestic reason that created necessitous and compelling reasons that justified a claimant to quit his or her employment. *See also Truitt v. Unemployment Compensation Board of Review*, 527 Pa. 138, 589 A.2d 208 (Pa.1991).

In *Beachem v. Unemployment Compensation Board of Review*, 760 A.2d 68 (Pa. Cmwlth.2000), a case concerning whether a father who voluntarily terminated his employment in another state to return to Pennsylvania to care for his emotionally and behaviorally disturbed child was eligible for benefits. In holding that he was eligible for benefits, we set forth the standard that a claimant must meet to be eligible for benefits when he or she voluntarily left employment for domestic reasons:

A cause of a necessitous and compelling nature exists where there are circumstances that force one to terminate his employment that are real and substantial and would compel a reasonable person under those circumstances to act in the same manner. *Livingston v. Unemployment Compensation Board of Review*, 702 A.2d 20 (Pa.Cmwlth.1997). As stated by the Supreme Court in *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 359, 378 A.2d 829, 833 (1977), quoting from the *Sturdevant Unemployment Compensation Case*, 158 Pa.Super. 548, 557, 45 A.2d 898, 903 (1946):

A worker's physical and mental condition, his personal and family problems, the authoritative demand of legal duties-these are circumstances that exert pressure upon him and imperiously call for decision and action.

When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by neces-

---

**1.** Section 402(b)(2)(II) stated at that time: "An employe shall be ineligible for compensation for any week ... (2) In which his or her unemployment is due to leaving work (I) to accompany or to join his or her spouse in a new locality, or (II) because of a marital, filial or other domestic obligation or circumstance, whether or not such work is in 'employment' as defined in this act: Provided, however, That the provisions of this subsection (2) shall not be applicable if the employe during a substantial part of the six months either prior to such leaving or the time of filing either an application or claim for benefits was the sole or major support of his or her family, and such work is not within a reasonable commuting distance from the new locality to which the employe has moved." The provision was repealed in 1980.

sitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits.

760 A.2d at 71.

In this case, there is no evidence that Claimant's domestic situation caused her to leave her employment and relocate to Florida. All evidence indicates that her domestic partner moved to Florida to be with her son in college because she wanted to, not because they needed to. This is clearly a personal choice and not a domestic reason that constitutes a necessitous and compelling reason to justify the award of benefits. Accordingly, I concur with the majority that Claimant is ineligible for benefits.

CONCURRING OPINION BY Judge LEAVITT.

I concur in the majority opinion. I write separately because I believe that *Wallace v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 342, 393 A.2d 43 (1978), was wrongly decided.

Unemployment compensation was initially established to provide a safety net for persons who lost their job, either temporarily or permanently, because of economic factors beyond their control, such as a recession or a plant closing. Unemployment compensation benefits were intended to bridge the gap for these persons while they sought alternate employment. At some point the General Assembly expanded the program to provide this economic bridge to persons who lost their job for compelling job-related reasons, such as on the job discrimination or harassment or an employer's illegal recording of telephone calls. *Wallace,* 393 A.2d at 46. However, the General Assembly also made it clear that leaving a job for compelling, but not job-related reasons, did not entitle one to benefits. Specifically, leaving a job to follow a spouse or to care for a parent or child did not entitle one to benefits.

Using the rational relationship test, this Court in *Wallace* found the domestic reason exclusion from benefits to violate principles of equal protection.[1] The decision was reached by a four to three vote, with one of the four votes a concurrence in the result. More important than the close vote is the fact that the jurisprudence expressed in *Wallace* is dated and not consistent with more recent holdings of the United States and Pennsylvania Supreme Courts. Economic legislation nearly always survives a rational relationship challenge. *See, e.g., Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977); *Prince v. Unemployment Compensation Board of Review,* 832 A.2d 583 (Pa.Cmwlth.2003).

The General Assembly revised the Unemployment Compensation Law to eliminate the statutory provision struck down in *Wallace.* Accordingly, leaving a job for non job-related, domestic reasons does not render one ineligible for unemployment compensation benefits. Now we have a statutory scheme whereby judges decide what domestic reason for leaving a job qualifies one for benefits. Since we judges have decided the contours of the follow-the-spouse doctrine, we are free to change that doctrine to include couples that are unmarried, whether by choice or compul-

---

1. Finding the legislation's eligibility standards to violate equal protection, this Court went on to find an ancillary due process violation, holding that each unemployed person had the right to prove his reasons for leaving a job, whether domestic or job-related, to be compelling.

sion. I believe, however, that the General Assembly, not judges, should make the hard policy decisions on eligibility. Legislators have access to all kinds of relevant information that courts do not have, and they, not judges, are best suited to deciding when an expansion of benefits is appropriate, fair and affordable.

## DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that: (1) the Unemployment Compensation Board of Review (UCBR) did not err in refusing to remand this case for additional evidence relating to the circumstances under which Joan Procito's (Claimant) domestic partner left her employment and moved to Florida because the "following spouse doctrine" does not apply to unmarried same-sex couples;[1] (2) assuming that the "following spouse doctrine" does apply, Claimant would be ineligible for benefits because Claimant failed to prove that her domestic partner's decision to leave her employment and move to Florida was caused by circumstances beyond her control; and (3) because Claimant did not meet that burden, it is not necessary to determine whether the UCBR's failure to apply the "following spouse doctrine" to Claimant's same-sex family violated Claimant's equal protection rights. (Majority op. at 260.) For the following reasons, I cannot agree.

### I. Refusal to Remand

In this case, the UCBR, which adopted the determination of the referee, made **only** four findings of fact.

1. The claimant worked from July 11, 2005 through July 31, 2006, as a full-time Financial Manager for Cushman & Wakefield of Pennsylvania, Inc. The claimant earned $66.00 an hour.

2. The claimant voluntarily resigned her position to follow her domestic partner to Florida.

3. The claimant's domestic partner relocated to Florida in order to be near her son, who has a learning disability.

4. The claimant resigned her position and relocated to Florida because she was not financially able to maintain two separate households in two states.

(Findings of Fact, Nos. 1–4.) Based on these four findings, the UCBR then determined that Claimant was ineligible for benefits under section 402(b) of the Unemployment Compensation Law (Law)[2] because, "unfortunately,"[3] unless Claimant is legally married to her domestic partner, she cannot prove a necessitous and compelling reason for leaving her employment. (Referee's op. at 2); *see Kurtz v. Unemployment Compensation Board of Review*, 101 Pa.Cmwlth. 299, 516 A.2d 410 (1986) (holding that the "following spouse doc-

---

1. Under the "following spouse doctrine," where a claimant leaves work to accompany a spouse to a new locality, the following spouse must show an economic hardship in maintaining two residences or that the move has caused an insurmountable commuting problem. *Wheeler v. Unemployment Compensation Board of Review*, 69 Pa.Cmwlth. 201, 450 A.2d 775 (1982). The following spouse also must show that the spouse's relocation was caused by circumstances beyond the control of the spouse and was not brought about by purely personal preference. *Id.*

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides that a claimant is ineligible for benefits for any week in which her unemployment is due to leaving work without a necessitous and compelling cause. 43 P.S. § 802(b).

3. It is apparent that the UCBR believed that, if Claimant had been legally married, she would have met her burden of proving necessitous and compelling cause under the "following spouse doctrine."

trine" does not apply to an unmarried heterosexual couple because, until there is a marriage, there is no family unit), *appeal denied,* 516 Pa. 644, 533 A.2d 715 (1987); *see also Nimitz v. Unemployment Compensation Board of Review,* 699 A.2d 822 (Pa.Cmwlth.1997) (relying on *Kurtz* to hold that the "following spouse doctrine" does not apply to an unmarried heterosexual couple with children).

The majority agrees that the "following spouse doctrine" does not apply to unmarried couples, but, in order to avoid addressing the constitutional question raised by Claimant on appeal, the majority actually **applies** the doctrine in this case.[4] The majority's conclusion is that Claimant **failed to prove** that her domestic partner left her job and moved to Florida due to circumstances beyond her control. However, Claimant attempted to present evidence on that very issue, but the referee would not allow it, believing that the "following spouse doctrine" did **not** apply and that the circumstances of her partner's separation were irrelevant.[5] **It is a clear violation of Claimant's due process rights for the majority to apply the "following spouse doctrine" on appeal when the referee would not allow Claimant a full and fair opportunity to be heard on the matter.**

Moreover, the majority's conclusion, i.e., that Claimant failed to meet her burden of proving that her domestic partner quit due to circumstances beyond her control, is based on testimony that the UCBR never used to formulate a finding of fact.[6] Within this court's limited scope of review, this court may examine testimony to determine whether findings of fact are supported by substantial evidence, but this court may **not** examine testimony for the purpose of making findings of fact. *See Platz v. Unemployment Compensation Board of Review,* 709 A.2d 450 (Pa.Cmwlth.) (stating that the exclusive role of fact-finder belongs to the UCBR), *appeal denied,* 556 Pa. 699, 727 A.2d 1125 (1998); section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Thus, in my view, the majority cannot avoid the constitutional issues by applying the "following spouse doctrine."

## II. Necessitous and Compelling Cause

A cause of necessitous and compelling nature exists where real and substantial circumstances force a claimant to terminate her employment and would compel a reasonable person to act in the same man-

---

4. On the one hand, the majority states that evidence to prove the "following spouse doctrine" is completely irrelevant; on the other hand, the majority concludes that Claimant did not present sufficient evidence to prove the elements of the "following spouse doctrine." This places Claimant in a "Catch–22" situation, giving her a burden that is impossible to meet.

5. A referee must give a *pro se* claimant every assistance that is compatible with the impartial discharge of official duties. 34 Pa.Code § 101.21(a). This means that a referee must help a *pro se* claimant adequately develop the facts necessary for a decision. *Lewis v. Unemployment Compensation Board of Review,* 814 A.2d 829 (Pa.Cmwlth.2003). The majority states that Claimant failed to prove that her

domestic partner's son **needed** her in Florida. (Majority op. at 266.) However, because the referee believed it was irrelevant, the referee made no inquiries about the son's special needs or how the presence of Claimant's domestic partner in Florida would alleviate them.

6. For example, the majority relies on a portion of Claimant's testimony to find that the domestic partner's main reason for leaving her job was stress. (Majority op. at 266.) While giving credence and weight to that testimony, the majority gives no credence or weight to Claimant's testimony that job stress had an adverse effect on her domestic partner's health. (N.T. at 10.) Of course, only the UCBR can determine the credibility and weight of evidence.

ner. *Beachem v. Unemployment Compensation Board of Review*, 760 A.2d 68 (Pa. Cmwlth.2000). If a claimant leaves employment when compelled to do so by family obligations, the claimant is entitled to benefits. *Id.*

### A. "Following Spouse Doctrine"

Where a claimant leaves work to accompany a spouse to a new locality, the following spouse is entitled to benefits if he or she shows that: (1) there was an economic hardship in maintaining two residences or that the move caused an insurmountable commuting problem; and (2) the spouse's relocation was caused by circumstances beyond the control of the spouse and was not brought about by purely personal preference. *Wheeler v. Unemployment Compensation Board of Review*, 69 Pa.Cmwlth. 201, 450 A.2d 775 (1982).

The "following spouse doctrine" does not apply to unmarried heterosexual couples because there can be no family unit absent a marriage, even where a child is involved. *Kurtz; Nimitz.* In other words, the only type of heterosexual family unit recognized by this court for purposes of the "following spouse doctrine" is one within the bounds of marriage.[7] To be clear, this court believes that unmarried heterosexual couples with children, who live together and support one another like families, are not really "families." Thus, whenever this court discusses preservation of the **family** unit in "following spouse doctrine" cases, this court really is talking about preservation of the **marriage.**

> While preservation of the family unit [i.e., marriage,] does not, in and of itself, give rise to necessitous and compelling reason ... we are not indifferent to its

social desirability. Moreover, in the absence of statutory language mandating such application, we are disinclined to interpret the Law in a way which tends to be disruptive to family [i.e., marital,] unity.

*Stevens v. Unemployment Compensation Board of Review*, 81 Pa.Cmwlth. 239, 473 A.2d 254, 257 (1984) (citation omitted) (awarding benefits because, although the marriage ultimately failed, the claimant made a good faith effort to keep the family/marriage together).

Clearly, then, heterosexuals who have **chosen** to raise a family outside the bounds of marriage are not entitled to benefits under the "following spouse doctrine." *Nimitz.* However, this case is not about a heterosexual couple that made such a choice. This case is about a same-sex couple who **would choose** to raise a family within the bounds of marriage **but may not legally do so.** Whether this court should apply the "following spouse doctrine" to same-sex families, where marriage is not an option, is a question of first impression.

### B. No Specific Exclusion

In 1953, section 402(b) of the Law specifically excluded necessitous and compelling cause claims based on marital, filial and domestic circumstances; however, that exclusion was repealed in 1955. *See Pittsburgh Pipe and Coupling Company v. Unemployment Compensation Board of Review*, 401 Pa. 501, 165 A.2d 374 (1960). Recognizing the repeal of the statutory exclusion, our supreme court stated:

> In determining whether ... facts exist [of a necessitous and compelling reason for leaving employment based on mari-

---

7. This court recognizes unmarried, heterosexual, single-parent families for other purposes in determining necessitous and compelling cause. *See Beachem* (holding that a single father who relocated to care for an eleven-year-old son with emotional and behavioral problems had a necessitous and compelling reason for leaving his employment).

tal, filial or domestic circumstances], **the test is** not whether the claimant has taken himself out of the scope of the [Law], but **whether the [Law] specifically excludes him from its provisions.** That is what is meant by a liberal and broad construction.

*Id.* at 509, 165 A.2d at 378 (emphasis added). In other words, if the legislature intended to exclude a specific necessitous and compelling cause claim, the legislature knew how to place the exclusion in the Law.

Section 402(b) of the Law no longer specifically excludes necessitous and compelling cause claims based on marital, filial or domestic circumstances. Thus, **any** type of necessitous and compelling cause claim based on domestic circumstances is permitted, even a claim based on the domestic circumstances of same-sex families. The "following spouse doctrine" is a type of necessitous and compelling cause claim based on marital and/or domestic circumstances. Because the statute does not limit such claims, the courts cannot limit such claims. *Id.*

### C. *In Loco Parentis*

Our supreme court has stated that the rights and liabilities arising out of an *in loco parentis* relationship are exactly the same as between parent and child. *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913 (2001). The phrase *in loco parentis* refers to a person who puts himself or herself in the

situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption.[8] *Id.* In Pennsylvania, a same-sex domestic partner may seek partial custody of a child based on the doctrine of *in loco parentis.* *Id.* This is based on the fact that a child may establish strong psychological bonds with an individual who, although not a biological parent, has lived with the child and provided care, nurture and affection to the child, assuming in the child's eyes a stature like that of a parent. *Id.* Thus, in every case, the paramount consideration is the best interests of the child. *Id.*

Inasmuch as our supreme court has recognized the bonds that unite same-sex families, even without the benefit of legal marriage, it would be absurd to suggest that same-sex families do not experience the same real and substantial pressure that traditional families experience when one parent must relocate due to circumstances beyond his or her control. Here, Claimant presented evidence indicating that her domestic partner has "sons," not just the special needs son attending college, and that Claimant has been "an integral part of the raising of [those] sons."[9] (O.R., Item No. 5, ex. 3.) Thus, although Claimant cannot be legally married to her domestic partner, I would consider Claimant's family to be a real family and apply the "following spouse doctrine" in this case.[10]

---

8. I note that an individual may legally adopt the child of her same-sex partner where it would be in the best interests of the child. *In Re: Adoption of R.B.F.*, 569 Pa. 269, 803 A.2d 1195 (2002).

9. The mere fact that the domestic partner's son is an adult child with special needs does not preclude an inquiry, on remand, into whether it is in the best interests of that child for his birth mother to leave her employment, i.e., whether the best interests of the child

create necessitous and compelling cause to leave employment. The age of the child is irrelevant; indeed, the person with special needs could be an elderly parent or sibling. Moreover, should the UCBR find that Claimant is *in loco parentis* with her domestic partner's son, so that the Claimant stands in the shoes of a parent, I submit it would be appropriate to apply the "following spouse doctrine."

### III.  Equal Protection

In my view, the UCBR's failure to apply the "following spouse doctrine" because Claimant is not married to her domestic partner violates Claimant's equal protection rights.  The essence of equal protection under the law is that like persons in like circumstances will be treated similarly.  *Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995).  Of course, the right to equal protection does not absolutely prohibit the classification of individuals for the purpose of receiving different treatment, provided that the classification is reasonable rather than arbitrary, i.e., the classification must rest upon some ground of difference that justifies the classification.  *Id.*

In *Wallace v. Unemployment Compensation Board of Review*, 38 Pa.Cmwlth. 342, 393 A.2d 43 (1978), this court held that the exclusion of necessitous and compelling cause claims based on marital, filial or domestic, i.e., family, circumstances violates equal protection rights.  Likewise, here, the exclusion of a necessitous and compelling cause claim under the "following spouse doctrine" based on Claimant's marital status violates her equal protection rights.

The UCBR contends that, although section 402(b) of the Law does not classify claimants based on their marital status for purposes of a necessitous and compelling cause claim, courts may do so under the "following spouse doctrine" in order to protect the limited assets of the unemployment compensation fund.  (*See* majority op. at 7.)  However, in *Wallace*, this court rejected the same argument as patently arbitrary.  *See Wallace.*  To reiterate, the pressures that create necessitous and compelling cause under the "following spouse doctrine" are real and substantial whether the claimant is married or not.  There is simply no difference that would justify dissimilar treatment.

Accordingly, I would vacate and remand for further proceedings and, ultimately, application of the "following spouse doctrine."

---

**10.**  The majority fails to consider the "best interests of the child" doctrine, which motivates and controls family law.  If Claimant were to prove that she has provided care, shelter, nurture and affection to the children of her domestic partner, then Claimant and her partner have a real family, and, in a real family, the best interests of a child can create necessitous and compelling cause for leaving employment.