IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lakeisha Whitehurst, : 
        Petitioner : 
        v. : No. 309 C.D. 2023
         : 
Unemployment Compensation : Submitted: May 7, 2024
Board of Review, : 
        Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: June 24, 2024

        Lakeisha Whitehurst (Claimant), proceeding *pro se*, petitions for review of the order of the Unemployment Compensation Board of Review (Board) mailed January 26, 2023. The order affirmed the decision of the Referee, which found Claimant ineligible for benefits under the provisions of Section 401(d)(1) of the Unemployment Compensation Law (Law)[1] and denied benefits for claim weeks ending January 22, 2022, to June 25, 2022, when Claimant was on a six-month maternity leave of absence. After careful review, we affirm.

## I. Background

        Claimant was employed full time as a social work services manager with the City of Philadelphia Department of Prisons (Employer). (Certified Record (C.R.)

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1).

at 006.) On December 31, 2021, Claimant had an emergency cesarean section (c-section) and delivered her baby prematurely at 27 weeks. *Id.* at 048. Employer did not offer light-duty work and placed Claimant on an unpaid maternity leave of absence effective December 31, 2021, with an expected return to work date of June 30, 2022. *Id.* at 047-048. On January 18, 2022, while on the approved leave of absence, Claimant filed for unemployment compensation (UC) benefits. In her March 27, 2022 responses to the Illness/Injury/Disability Questionnaire (Questionnaire), Claimant answered "no" to the questions "Are you available to work?" and "Are you able to work?" *Id.* at 046-47. Claimant stated: "I delivered my baby prematurely via emergency c-section [at] 27 weeks due to severe preeclampsia, pulmonary embolisms[,] and deep vein thrombosis[,] and I am currently under [doctor's] care for these illnesses. I am still being treated for these illnesses while on unpaid maternity leave." *Id.* The Questionnaire also asked, "Do you presently have other restrictions limiting your ability and/or availability for work?" Claimant answered "yes" and explained further:

> I have a newborn baby that has just come home from the [Neonatal Intensive Care Unit [NICU)] roughly a week or so ago. Also, I am being treated for the above-mentioned Illnesses, and I am unable to walk long distances, sit or stand for a long period of time without taking a break. I am [c]urrently employed as a [s]ocial [w]orker in the Philadelphia [Department] of Prisons. Unfortunately[,] my position does [not] off[er] "light duty" for my job description. I am required to sit one hour a day on the housing unit to provide services to the inmates. I am also required to conduct in[-]office interviews, which can take more than an hour to complete. I am not allowed to leave an inmate to take a break during an interview, which is needed at the moment with the deep vein thrombosis.

*Id.*

On April 22, 2022, the Harrisburg UC Service Center issued its determination, concluding that Claimant was not able and was not available to work

beginning January 16, 2022, and, therefore, did not qualify for UC benefits pursuant to Section 401(d)(1) of the Law. On May 24, 2022, Claimant appealed, disputing the determination that she was not able and available to work while on maternity leave of absence. *Id.* at 065-067.

In late June 2022, Claimant's doctor released her to return to her position with Employer without any restrictions. *Id.* at 129. Employer, per its policy, then sent her to its own physician who medically cleared Claimant to return to work on July 5, 2022. *Id.* at 135. Claimant returned to work at the prison on July 6, 2022.

Thereafter, a hearing was held before a Referee on August 29, 2022, at which Claimant testified on her own behalf, and Employer did not present any testimony. Claimant testified that she was employed as a full-time social worker and her last day of work was December 28, 2021. *Id.* at 103. She began a leave of absence effective December 31, 2021, because, on said date, she gave birth through an emergency c-section due to a pregnancy-related medical condition. *Id.* Claimant stated that sometime in June 2022 she was released by her doctor to return to work, but Employer required a medical release from its own doctor prior to resuming employment. *Id.* at 105-06. Claimant also testified that originally, she planned to take maternity leave in March 2022 around the baby's due date, but the baby was delivered on December 31, 2021, at 27 weeks, which required the baby to stay in the NICU. *Id.* at 106.

Subsequently, another hearing was held on September 23, 2022, to specifically address the question of whether Claimant was able and available to perform suitable work while on maternity leave of absence, as required by Section 401(d)(1) of the Law. The Referee incorporated by reference the testimony Claimant gave at the first hearing because Claimant testified regarding the reason she took a

3

leave of absence which was relevant to the actual determination of her appeal. *Id.* at 126. Additionally, Claimant had provided the following responses to the Referee:

> [Referee]: Well, at some point, did you inform your employer that you were able and available to return to your usual job?
>
> [Claimant]: Yes.
>
> [Referee]: And do you recall when you informed them of that?
>
> [Claimant]: I want to say at the end of June [2022], as well.
>
> * * * *
>
> [Referee]: Well, is there anything else you would like to add on the subject of whether you were medically able to work and available to do suitable work during the weeks that you were claiming UC benefits?
>
> [Claimant]: So I was confused about when they say was I able and available, because I was trying to understand if it was just in general or was it specific to my department? And that was a vague question, so there was confusion for me there. I work inside of a prison and I do social work. So if I was able to do my actual job in the prison from home, I would not be able to do my job from the prison. But if you ask me if I was able to do social work outside of the prison in another department or agency that had at-home work, then yes, I was able to work. So the question is vague. It doesn't say if its generally or specific to my department.
>
> [Referee]: Well, there are two separate issues. Number one, were you medically able to do some type of work at some point?
>
> [Claimant]: Yes
>
> [Referee]: You testified that you received medical clearance from your own doctor in late June.
>
> [Claimant]: Right to go back to [Employer]. There was no other thing that told me that I needed to have medical clearance to go to work in general. I got clearance to go back to work for [Employer] off of the maternity leave.

4

[Referee]: So you did not discuss that with your doctor because, well, you did not discuss clearing you to return to some other work environment. Correct?

[Claimant]: No, I didn't have that conversation with my doctor for another environment. And I didn't have that conversation because I had a recall date for my position [with Employer].

(Notes of Testimony (N.T.), Hearing 09/23/22, pp. 7-8; C.R. at 130-31.)

[Claimant]: So with [Employer], the work that I do, like I was explaining, is inside the prison. And we have a special system. However, [Employer] did not have me – they did not offer me anything else to do. So I wanted to put that on record, because I was thinking about it where they had not give me, they had to say, okay, well, you cannot do you normal job here because the system is, basically, for the prison. And it is a breach of security to do it outside. But here is something else that you can do. They did not offer my anything else.

(N.T. Hearing 09/23/22, p. 8; C.R. at 131.) Employer, once again, did not present any testimony. *Id.* at 126.

At the conclusion of the hearing, the Referee modified the UC Service Center's determination to grant Claimant benefits for the weeks ending July 2, 2022, and July 9, 2022, to account for the delay between Claimant's doctor's clearance and Employer's doctor's clearance but denied benefits pursuant to Section 401(d)(1) of the Law for claim weeks ending January 22, 2022, through June 25, 2022, when Claimant was on leave of absence. *Id.* at 134-43. The Referee reasoned:

Section 401(d)(1) of the [Law] provides that, for any weeks in which they claim compensation, claimants must be able to perform, and be available for, suitable work, and claimants have the burden of proving that they are both able and available. The [UC] Service Center is supposed to determine whether claimants meet the requirements of this Section on a week-by-week basis. In this case, [] [C]laimant testified that, at some point during the maternity leave, she would have been able to work if she could do so from home but that []

5

[E]mployer did not offer this accommodation due to security concerns. While [] [C]laimant's testimony is credible that [] [E]mployer would not have allowed such an accommodation, and even presuming she was medically able to perform work from home shortly after filing the UC application, she did not show that she was "available" for suitable work because she did not intend to work from home during said period; this, plus the medical and child care needs associated with the recent childbirth, does not support a finding that she was realistically attached to the labor market. She did not, therefore, meet the requirements of Section 401(d)(1) during the period of maternity leave except for the claim weeks ending July 2[, 2022,] and July 9, 2022; she established she was medically cleared to return to her job during "late June" and informed [] [E]mployer thereof immediately but, due to [E]mployer's requirement that she attend its medical appointment first, she was delayed in her return.

*Id.* at 135-36.

On September 28, 2022, Claimant appealed the Referee's decision. *Id.* at 145-47. On January 26, 2023, the Board mailed its order affirming the Referee's decision and concluding that Claimant failed to show that she was able to perform, and available for any type of work. The Board explained:

When a claimant files for UC benefits, it is presumed that she is both able and available to work. The presumption is rebuttable by some evidence that suggests that the claimant's ability or willingness to work. Once the presumption is rebutted, the claimant must prove that she is ready, willing, and able to accept some type of work, and that there is a reasonable opportunity for securing such work in the vicinity in which the claimant lives. Additionally, claimants do not have to prove that they are available for their customary line of work, but only that they are able to do some type of work and that there is a reasonable opportunity for securing such work in the vicinity where they live.

In this case, the presumption has been rebutted by [] [C]laimant's own statements in the claim record that she was not available for work due to illness, injury, or disability. She

6

further explains that she underwent an emergency cesarean delivery and subsequently suffered from severe preeclampsia, pulmonary embolisms, and deep vein thrombosis and was under a doctor's care for these pregnancy complications. [] [C]laimant was unable to walk long distances, sit, or stand for long periods of time without taking a break, and the prison did not offer light duty.

While [] [C]laimant is not required to be able and available for her customary line of work, she must show that she is able and available for some kind of work. [] [C]laimant believed she was able and available for some type of work at some point but does not offer any date that she became available for some type of work. She did not request a release from her doctor until late June 2022 because [] [E]mployer could not offer light duty to her as her job had to be performed inside the prison. In late June 2022, [] [C]laimant's doctor released her to return to work with [Employer] without restrictions. [] [E]mployer then sent her to its own physician who medically cleared her to return to work without restrictions on July 6, 2022. Therefore, the Board finds that [] [C]laimant was not able and available for work for claim weeks ending January 22, 2022, to June 25, 2022. [] [C]laimant was able and available for work for the claim weeks ending July 2, 2022, and July 9, 2022.

On appeal, [] [C]laimant contends that giving birth to her child should not exclude her from benefits. Unfortunately for [] [C]laimant, unemployment compensation benefits are not to cover weeks in which the claimant is not realistically attached to the labor market. Once the presumption is rebutted, the claimant has to show that she could perform some type of work and that she had a reasonable opportunity to secure such work. The record shows that [] [C]laimant's ability was hindered due to giving birth. [] [C]laimant then failed to show she had a reasonable attachment to the labor market as required by law.

*Id.* at 162-68.

Claimant now petitions this Court for review of the Board's order.

7

## II. Issues

In her Statement of Questions Involved, Claimant raises the following two issues:

1. Did the [Board] commit an error of law and/or abuse its discretion by failing to make plain that claimants do not have to prove that they are available for their customary line of work, but only that they are able to do some type of work?

2. Did the [Board] commit an error of law and/or abuse its discretion by denying [Claimant] benefits due to childbirth?

(Claimant's Br. at 4.)

## III. Parties' Arguments

From what we can glean from Claimant's brief, her first issue relates to the alleged vagueness of the Questionnaire. Claimant asserts: "The [Board] states that claimants do not have to prove that they are available for their customary line of work, but only that they are able to do some type of work and that there is a reasonable opportunity for securing such work in the vicinity where they live. That information is not conveyed when applying for benefits." (Claimant's Br. at 7.) Claimant seems to be arguing that the Board should not have relied on her answers on the Questionnaire because it was unclear whether the question pertained to her ability and availability to work **for Employer** as opposed to her ability and availability to work for **another employer in a light-duty, hybrid or remote position**. She maintains that had the question been properly explained, she would have responded that she **was** able to perform "various ways of work, such as remote work, hybrid work and work within less erratic conditions." *Id.* at 8. Therefore, the Board erred when it found she was not able and available to work during claim weeks ending January 22, 2022, to June 25, 2022.

8

Claimant next argues that the Board erred when it concluded that she was not realistically attached to the labor market because of childbirth. She asserts:

> Childbirth should not exclude someone from being "realistically attached to the labor market." Women have children every day, have babies in the NICU, and have medical conditions and still work. In my opinion if I may state, the aforementioned scenarios were used against me negatively to deny benefits. The world has moved to various ways of work, such as remote work, hybrid work and work within less erratic conditions, which I could have done as well.

*Id.* at 8.

In response, Employer asserts that even though Claimant stated that she was medically able to do some work at some point in time, she did not say when that was. (Employer's Br. at 8-9.) In addition, Employer contends that because Claimant acknowledged that she did not have a conversation with her doctor regarding her ability to work despite her medical conditions and because Claimant did not provide any proof that she was able to work before she was officially cleared by her doctor in June of 2022, Claimant did not carry her burden of proof.

## IV. Discussion
### A. General Legal Principles

Our review in UC cases is limited to determining whether there is a constitutional violation, an error of law, a failure of the Board to follow procedure, or findings which lack the support of substantial evidence in the Board's adjudication. *Procito v. Unemployment Compensation Board of Review*, 945 A.2d 261, 262 n.1 (Pa. Cmwlth. 2008). "Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion." *Stage Road Poultry Catchers v. Department of Labor & Industry, Office of Unemployment Compensation, Tax Services*, 34 A.3d 876, 885 (Pa. Cmwlth. 2011). In addition, the Board serves as factfinder, empowered

to resolve conflicts in evidence and render credibility determinations. *Procito*, 945 A.2d at 262 n.1.

Section 401(d)(1) of the Law provides, in relevant part, that "[c]ompensation shall be payable to any employe[e] who is or becomes unemployed, and who . . . [i]s able to work and available for suitable work." 43 P.S. § 801(d)(1). Although a claimant bears the burden of proving availability for suitable work, an unemployed worker who registers for UC benefits is presumed to be available under Section 401(d)(1). *Rohde v. Unemployment Compensation Board of Review*, 28 A.3d 237, 243 (Pa. Cmwlth. 2011). "[E]vidence that a claimant's physical condition limits the type of work [the claimant] is available to accept" serves to rebut the presumption. *Molnar v. Unemployment Compensation Board of Review*, 397 A.2d 869, 870 (Pa. Cmwlth. 1979). If evidence rebuts the presumption of availability, the burden shifts to the claimant to establish that she was able to do some type of work, and that there was a reasonable opportunity for securing work. *Id.* The ultimate issue is whether conditions on the claimant's employment would so limit her availability as to effectively remove her from the labor market. *Rhode*, 28 A.3d at 243. Stated differently, the issue is whether the conditions "would give a search for employment an unreasonably low possibility of success." *Kuzma v. Unemployment Compensation Board of Review*, 523 A.2d 830, 833 (Pa. Cmwlth. 1987) (citations omitted).

This Court has declined to hold as a matter of law that any claimant on a leave of absence is unavailable for suitable work. *Tokar v. Unemployment Compensation Board of Review*, 385 A.2d 634 (Pa. Cmwlth. 1978). It is well established that "[i]t may not be presumed as a matter of law that a person on a leave of absence from his previous job is unavailable for work. It follows, as we have also held, that a woman may not be presumed unavailable for work, simply because she was

10

placed on a pregnancy leave of absence." *Pennsylvania Electric Co. v. Unemployment Compensation Board of Review*, 450 A.2d, 779, 782 (Pa. Cmwlth. 1982); *Wincek v. Unemployment Compensation Board of Review*, 412 A.2d 699, 701 (Pa. Cmwlth. 1980) (citations omitted).

## B. Analysis

Applying these principles, Claimant registered for UC benefits and was presumed to be able to work and available for suitable work. *Rohde*, 28 A.3d at 243. Claimant indicated on the Questionnaire that she was unable to work because she had "delivered [her] baby prematurely via emergency c-section [at] 27 weeks due to severe preeclampsia, pulmonary embolisms[,] and deep vein thrombosis and **[she is] currently under [a doctors'] care for these illnesses**." (C.R. at 046-047) (emphasis added). She further stated that she was not available to work because she was "**still being treated for these illnesses** while on unpaid maternity leave." *Id.* (emphasis added). Claimant also explained that "[she was] unable to walk long distances, or sit or stand for a long period of time without taking a break." *Id.* at 051. In so doing, Claimant placed restrictions on the type of work that she was willing to accept due to her inability to walk long distances and sit or stand for a long time. *Rohde*, 28 A.3d at 243. The burden therefore shifted to Claimant, who failed to testify that there was any type of work she was able to do or that she had a reasonable opportunity to secure work with these restrictions. *Id.*

In *Wincek v. Unemployment Compensation Board of Review*, 439 A.2d 890 (Pa. Cmwlth. 1982) (*Wincek II*), a fast-food employee informed her supervisors that she was pregnant and that her attending physician advised that she engage in only sedentary employment. *Id.* at 891. After considering whether the claimant could perform her duties while seated on a stool, the parties determined that the claimant

11

should take a leave of absence until released from the medical restrictions and then return to her job at the restaurant. *Id.* Thereafter, the claimant applied for UC benefits and her application was denied. *Id*. The claimant appealed to this Court, which remanded the matter to the Board to determine, *inter alia*, whether the claimant's leave of absence was voluntary or involuntary. *Id.* The Board held an evidentiary hearing and determined that because the claimant's leave was directed by the employer, it was involuntary. *Id.* Notwithstanding, the Board found that the claimant was not "available" for work during the leave of absence and, therefore, the Board denied UC benefits. *Id.* The claimant again appealed to this Court.

Finding the presumption of availability rebutted in that situation, we explained:

> We have consistently held that the presumption of availability "is rebuttable by evidence that a claimant's physical condition limits the type of work he is available to accept." *Pizzo v. Unemployment Compensation Board of Review*, 424 A.2d 1021, 1023 ([Pa. Cmwlth.] 1981). For example[,] in *Chapman v. Unemployment Compensation Board of Review*, 414 A.2d 174 ([Pa. Cmwlth.] 1980)[,] where the claimant's lung condition limited his job availability to "sedentary, clean air endeavors[s]" and in *Baker v. Unemployment Compensation Board of Review*, [336 A.2d 671 (Pa. Cmwlth. 1975)], where the claimant's allergies limited her availability to part-time work of a sedentary nature, and in *Unemployment Compensation Board of Review v. Patsy*, [345 A.2d 785 (Pa. Cmwlth. 1975)], where the claimant's fractured leg limited him to sedentary jobs, we held the presumption of availability to be rebutted. It was reasonable and in complete accord with the decisions of this Court for the [Board] to conclude that the presumption was similarly unavailable to the claimant in this case.

*Wincek II*, 439 A.2d at 892 (citations and footnote omitted).

12

Here, the presumption of Claimant's availability to work was rebutted by the medical restrictions imposed upon Claimant by her doctor due to numerous health issues related to her pregnancy and by the restrictions she placed on herself regarding the type of work she could perform, namely light duty, because she could not walk, sit or stand for long periods of time.

With presumption of her availability to work rebutted, Claimant had to present evidence to affirmatively demonstrate her ability to do some work and that there was a reasonable opportunity to secure such work. In *Wincek II*, we explained:

> Once the presumption is rebutted it disappears and has no further effect upon the outcome of the case. Following a rebuttal of the presumption, a claimant must produce evidence that [she] is able to do some work and that there is a reasonable opportunity for securing such work. The Board's legal conclusion that it was the claimant's burden to show the existence of local employment opportunities within her limitations was not in error. No evidence was introduced at the referee's hearings in an attempt to show the availability of jobs for which the claimant was suited. Indeed, the only evidence on this issue is the claimant's testimony that her inquiries of friends and other establishments failed to disclose a single job opening.

*Wincek II*, 439 A.2d at 892.

As in *Wincek II*, Claimant offered no evidence to show the availability of jobs for which she was suited or of any effort, by her, to join the local labor market by searching for jobs within her medical restrictions or to make it known to the labor market that she was available to work in light duty from home during the weeks from January 22, 2022, to June 25, 2022. Although Claimant testified that she could have worked in a light duty job from home, she offered no evidence that she applied for any jobs during the relevant period. In fact, the evidence established that to the contrary,

13

Claimant intended all along to return to work for Employer in June of 2022, once she was cleared by her doctor and Employer's doctor.

We have held that "an employee who leaves her employment for medical reasons may be disqualified from the receipt of unemployment benefits as unavailable for work if the claimant commences a medical leave of absence of limited duration with the intention of then returning to the former employment." *Wincek II*, 439 A.2d at 892. In *Wincek II*, the claimant repeatedly testified that she intended and expected to return to work with the employer following the birth of her child, that she so informed her superiors, that a position was held open for her and that, on October 2, 1978, she returned to her former duties. *Id.* We concluded that "[t]here is adequate support for a conclusion that the claimant's period of unemployment was limited, at the outset, to the period of her disability due to pregnancy, that she expected and desired to return to her former employment following her confinement, and therefore, that she was not during the period of her medical leave, realistically attached to the local labor market." *Id.*

Here, like in *Wincek II*, Claimant testified that she planned to take maternity leave for the birth of her child, the record reflects that Employer held her position open with the expected return to work date on June 30, 2022, she sought a medical release from her doctor before the return date, and she returned to her former duties on July 6, 2022. (C.R. at 048, 106, 129.) Therefore, the Board did not err when it determined that Claimant was not realistically attached to the local labor market during the period of her leave.

In *Bogucki v. Unemployment Compensation Board of Review*, 421 A.2d 528 (Pa. Cmwlth. 1980), the claimant informed her employer that due to pregnancy she could no longer perform her duties as a cook. *Bogucki*, 421 A.2d at 529. She requested

14

lighter work, and upon being told that no lighter work was available, she accepted a leave of absence. She was found ineligible for benefits under Section 401(d)(1) of the Law, and she appealed. *Id.* We held that a pregnant claimant who accepted a leave of absence because her employer is unable or unwilling to grant her request for lighter work during her pregnancy, may be available for suitable work elsewhere and therefore cannot automatically be deemed ineligible for unemployment compensation while on the leave of absence and awaiting delivery of her child. *Id.* at 530. The Court additionally stated that "[t]he claimant's testimony and her doctor's certification, neither of which was controverted, showed she was able to do light work and was available for any such work when she applied for [UC] in January 1979 and at the time of the referee's hearing in February 1979." *Id.*

Here, unlike in *Bogucki*, Claimant failed to show through a doctor's certification or her testimony that she was able to do light work and was available for such work at the time she applied for benefits. At the time she applied for benefits she was on a medical leave of absence due to multiple health issues relating to her pregnancy. Further, although she testified that she could have worked remotely, she presented no evidence that she had made any attempt to secure such a position.

In *Davis v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1077 C.D. 2014, filed January 8, 2015),[2] the claimant applied for UC benefits after going on an approved medical leave. *Davis*, slip op. at 1. On her application, the claimant indicated that she was not able to work because of her injuries. The claimant also indicated that she was not available for work until her injuries and pain subsided. *Id.* The UC Service Center found the claimant was ineligible for benefits under Section

---

[2] We cite *Davis* for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code §69.414(a).

401(d)(1) of the Law. *Id.* During the appeal hearing, a referee asked the claimant to clarify the answers on her application for UC benefits, specifically, whether she was able and available to work and, if so, why she answered no on the application. *Id.* at 2. The claimant responded that she did not know how to fill out the application, she was available to work but not at her original job, and her employer did not provide her with a type of work she was available to do. *Id.* The referee concluded that the claimant's testimony directly conflicted with her application for UC benefits, and the claimant did not satisfy her burden under Section 401(d)(1) of the Law. On appeal to the Board, the Board affirmed the decision concluding that although the employer did not provide limited duty for the claimant's position, the claimant did not offer sufficient credible medical documentation or testimony during the hearing regarding her ability to work in a limited-duty capacity. *Id.* at 3. Upon review, this Court stated that the claimant herself had rebutted the presumption that she was able and available for suitable work. *Id.* at 4. We explained that even if the claimant indicated on the application that she was not able to work because she was confused and believed that she was responding to an inquiry as to whether she could perform her preinjury job with employer, the burden was on her to produce sufficient evidence at the hearing that she was ready, willing, and able to accept some suitable work within her medical restrictions. *Id.* (citations omitted). We concluded that based on the Board's credibility determination, the claimant did not meet her burden under Section 401(d)(1) of the Law because the "claimant's uncorroborated testimony was insufficient to establish that she was able and available for some type of work within her medical restriction." *Id.*

As in *Davis*, Claimant stated on her application for the UC benefits that she was unable and unavailable to work because she suffered from severe preeclampsia, pulmonary embolisms, and deep vein thrombosis and was unable to walk

long distances, sit, or stand for long periods of time without taking a break. At the hearing, Claimant testified that she was confused as to how to answer the questionnaire's question regarding her ability and availability to work. Claimant also did not provide any medical documentation regarding her ability and availability to perform some type of work. Claimant also testified that at some point during the maternity leave, she would have been able to work in a light-duty position if she could do so from home, but Employer did not offer this accommodation. The Referee found Claimant's testimony credible in this regard; however, the Referee concluded that Claimant did not show that she was available for light-duty work because she did not prove her intent to work from home in a light-duty position during said period between January 22, 2022, to June 25, 2022, and did not indicate when she could perform light-duty work. The Board affirmed the Referee's determination and concluded that Claimant's testimony rebutted the presumption that she was available to work due to illness, injury, or disability, and that she failed to show she had a reasonable attachment to the labor market as required by law. Neither the Referee nor the Board based its decision solely on Claimant's answers to the Questionnaire, but rather based it on Claimant's testimony. As in *Davis*, Claimant, herself, rebutted the presumption that she was able and available for suitable work making her ineligible for UC benefits. Even though Claimant testified that she was available to work from home during the period between January 22, 2022, to June 25, 2022, while she was on her medical leave of absence, Claimant offered no evidence to show the availability of jobs for which she was suited or of any effort, by her, to join the local labor market by searching for jobs within her medical restrictions or to make it known to the labor market that she was available to work in a light duty job during the weeks from January 22, 2022, to June

17

25, 2022. Therefore, the presumption that Claimant was able and available for work was rebutted.

## V. Conclusion

Accordingly, we conclude substantial evidence supports the Board's decision that Claimant was not able to work and available for suitable work under Section 401(d)(1), and we affirm the Board's order mailed January 26, 2023, which affirmed the Referee's decision deeming Claimant ineligible for UC benefits.

_____

PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lakeisha Whitehurst,             :
            Petitioner       :
          v.               :   No. 309 C.D. 2023
                                  :
Unemployment Compensation    :
Board of Review,           :
            Respondent    :

## ___ORDER___

AND NOW, this 24th day of June, 2024, the order of the Unemployment Compensation Board of Review, mailed January 26, 2023, is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge