589 A.2d 208

Kathleen TRUITT, Appellant,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.

Supreme Court of Pennsylvania.

Argued March 8, 1991.

Decided April 11, 1991.

John Stember, Neighborhood Legal Services Ass'n, Pittsburgh, for appellant.

Terry L. Fromson, Sharon M. Dietrich, Philadelphia, for Philadelphia Unemployment Project.

Ann Lee Begler, Begler Kowall & Ombres, Pittsburgh, Linda J. Wharton, Philadelphia, for Women's Law Project and Choice.

James K. Bradley, Asst. Counsel, Clifford F. Blaze, Deputy Chief Counsel, Harrisburgh, for Unemployment Compensation Bd. of Review.

Before NIX, C.J., and FLAHERTY, LARSEN, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue raised by this appeal is whether, for purposes of determining eligibility for unemployment compensation benefits, appellant, Kathleen Truitt, voluntarily left her

employment without cause of a necessitous and compelling nature,[1] when she quit her job due to her inability to locate suitable child care after her regular baby-sitter became unavailable.

Appellant was employed for six and a half years as a clerk for a trucking company until she was laid off in January of 1982. She worked thereafter on a temporary fill-in basis for the company and received unemployment compensation benefits until she exhausted them in 1982. Early in January, 1983, she filed a second year's claim for unemployment compensation benefits. During the same week in January of 1983, appellant secured a job as a waitress at T.G.I. Fridays. After an initial training period of four hours a day for two weeks, she was required to work twenty-five hours a week on either of two shifts—a day shift (10:00 a.m. until 5:00 p.m.) and a late night shift (4:30 p.m. until 3:00 a.m.), with schedules changing for every waitress each week.

Appellant is a single parent of two children who were aged nine and thirteen during the relevant time period. Appellant's mother cared for the children in appellant's home during both of appellant's shifts. On February 7, 1983, appellant's mother cracked a bone in her elbow. Although the injury was treated only with a sling for seventeen days, it did cause enough pain that appellant's mother was unable to drive a vehicle to appellant's residence, was unable to cook, was unable to provide transportation the children needed, and was unable to otherwise provide adequate care for the children.

Appellant was next scheduled to work a late night shift on February 9, 1983. She made inquiries of her sisters, former baby-sitters, and a day care center in an effort to find replacement care for her children, but no care was available during the hours after 6:00 p.m. Her mother also

---

**1.** Unemployment compensation claimants are ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, ..." 43 P.S. § 802(b).

searched and made inquiries in an effort to find replacement care. Appellant requested that her employer place her in a position that required only day shift work, but this request was denied. Appellant had not accrued any sick leave or vacation time in the four weeks that she had worked at T.G.I. Fridays; thus, she was unable to take a leave of absence. Not willing to risk the safety and well-being of her children by leaving them home alone until 3:00 in the morning, appellant terminated her employment on February 9, 1983.[2]

The Office of Employment Security denied appellant's application for unemployment compensation benefits. Appellant filed an appeal, and a hearing was held before a referee. Appellee's employer did not participate in the proceeding. The referee determined that because appellant did not show 1) that her baby-sitting problems were "insurmountable," and 2) that she had made any attempt to remain employed, appellant did not have necessitous and compelling reasons for a voluntary termination, and was thus not entitled to unemployment compensation benefits.

Appellant filed an appeal to the Unemployment Compensation Board of Review (Board), appellee herein. The Board affirmed the decision of the referee. Appellant filed an appeal to the Commonwealth Court which, applying a reasonable person standard to appellant's conduct, held that appellant did not show necessitous and compelling reasons for her voluntary termination. However, Commonwealth Court ordered the case remanded for a further hearing on appellant's job status at the time she worked for T.G.I. Fridays. The Commonwealth Court determined that if appellant worked part-time during the week that she had applied for unemployment compensation benefits, she would be entitled to collect partial benefits for the four weeks that she worked at T.G.I. Fridays. 43 P.S. § 753(w)(1). Appellant then filed a petition for allowance of appeal to this Court which was granted. Shortly before oral argument,

---

2. Appellant subsequently returned to work for the trucking company on a part-time basis on March 14, 1983.

appellee filed a motion to dismiss, arguing that the order of the Commonwealth Court was interlocutory. We granted appellee's motion without prejudice, over the dissent of this writer. *Truitt v. Commonwealth, Unemployment Compensation Board of Review*, 509 Pa. 628, 506 A.2d 899 (1986).

The case was remanded to the Board and a further hearing was held to determine whether appellant had been employed on a part-time basis as a waitress. Finding that appellant had been employed part-time at T.G.I. Fridays, the Board ruled that she was eligible for partial benefits for the time that she worked at T.G.I. Fridays as a waitress. Appellant filed an appeal to Commonwealth Court in regard to her eligibility for benefits for the time period subsequent to her termination of employment at T.G.I. Fridays. Commonwealth Court affirmed, and we granted appellant's petition for allowance of appeal and now reverse.

■ With regard to whether appellant's reasons for voluntarily terminating her employment were of a necessitous and compelling nature, we note that this is a legal conclusion which is subject to appellate review. *Taylor v. Commonwealth, Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). Although we are bound by the facts found by the referee, our duty is to determine whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence. 2 Pa.C.S.A. § 704.

■ A claimant who alleges that he or she terminated employment for necessitous and compelling reasons has the burden of establishing the existence of such reasons. *Taylor, supra.* In *Taylor,* we defined necessitous and compelling cause as follows:

"[G]ood cause" for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to ter-

minate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

474 Pa. at 358–59, 378 A.2d at 832–33.

■ Thus, using the reasonable person standard herein, it is readily apparent that the sudden physical disability of a trusted baby-sitter and the unavailing search for a replacement within two days produced both "real and substantial pressure" on appellant to terminate her employment. Considering the hours that appellant was required to work, we believe that any reasonable person who had to find child care on this short notice would have done what appellant did. Claimants need not place their children with strangers or unchecked day care agencies [3] in order to show that they have met the aforesaid standards that we impose upon them.

Appellant's efforts to provide for her family were commendable. She could have stayed home and collected unemployment compensation benefits after the trucking company, where she had been earning $11.89 an hour, laid her off. But no! She instead obtained employment as a waitress where her base pay was $2.01 an hour. She had not yet completed her probationary period of employment with T.G.I. Fridays when her mother was incapacitated. She attempted to find someone or an agency, to no avail, to watch her children while she was at work, and, additionally, she sought to arrange a different schedule with her employer. The employer declined to accommodate her either temporarily or permanently. There is nothing more that we can or should ask of an employee before that employee terminates his or her employment.

Accordingly, we reverse that part of the Commonwealth Court's order that is inconsistent with this opinion. The case is remanded to the Board to calculate and to pay the

3. There are no night care agencies, as opposed to day care agencies, in the metropolitan Pittsburgh area.

144

benefits to which appellant was entitled after she left her employment with T.G.I. Fridays.

NIX, C.J., and McDERMOTT and ZAPPALA, JJ., concur in the result.