Kathryn GANTER, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 16, 1998.
Decided Jan. 22, 1999.

Carol J. Dunkel, Harrisburg, for petitioner.

Barbara A. Thomas, Doylestown, for respondent.

Before FRIEDMAN, J. and KELLEY, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Kathryn Ganter (Claimant) appeals from an order of the Unemployment Compensation Board of Review (UCBR) reversing a referee's decision and denying Claimant unemployment compensation benefits because Claimant voluntarily terminated her employment without cause of a necessitous and compelling nature. We reverse.

Claimant was employed as a visiting nurse by Compassionate Care Hospice (Employer) from July 5, 1995 until her last day of work on April 3, 1998. (UCBR's Findings of Fact, No. 1.) At the time Claimant was hired, Employer's office was located in Lower Gwynned, Montgomery County, and Claimant was hired as a nurse in the Bucks County

area. (UCBR's Findings of Fact, No. 2.) On her employment application, Claimant indicated that she was available to work overtime without prior notice and was able to travel. (UCBR's Findings of Fact, No. 3.)

Claimant was a single mother of two children, a fourteen-year-old daughter and a young son, whom she dropped off at daycare in the morning before going to work for Employer. On the occasions when Claimant was asked to work overtime, Claimant picked up her son by 6:00 p.m., when daycare closed, and brought him home where Claimant's daughter watched the child. (Referee's Findings of Fact, No. 6.)

In December 1997, Employer informed its employees that the company was consolidating and relocating its office from Lower Gwynned to Conshohocken, Montgomery County, a thirty-mile commute from Claimant's residence. (UCBR's Findings of Fact, No. 4.) Employer also informed the employees that, due to the consolidation and relocation, Employer's coverage area would be expanded to encompass a five county area, including Philadelphia County. (UCBR's Findings of Fact, No. 4.) After being informed of the changes, Claimant continued to work for Employer. (UCBR's Findings of Fact, No. 5.)

At approximately 2:30 p.m. on March 12, 1998, Employer called Claimant at the Conshohocken office and asked her to travel to Philadelphia to conduct a patient admission. (UCBR's Findings of Fact, No. 6.) Claimant refused the assignment, explaining to Employer that she would not have enough time to travel to Philadelphia, conduct the patient intake interview and admission, and return to pick up her son from daycare by 6:00 p.m. (UCBR's Findings of Fact, No. 7.) Because of the March 12th incident, on March 13,

1998, Employer suspended Claimant for three days without pay and advised Claimant that she would be put on probation for a period of three months, during which time any further refusal of assignment would result in her discharge.[1] (UCBR's Findings of Fact, No. 9.)

On March 19, 1998, Claimant gave Employer two weeks notice that she would be resigning from her employment because she did not feel that she would be able to meet Employer's expectation that she be available to work anywhere in the five county area on demand. (UCBR's Findings of Fact, No. 10.) On April 3, 1998, Claimant voluntarily terminated her employment because she felt the disciplinary action taken against her on March 13, 1998 was too harsh and because she felt she would not be able to meet Employer's expectations, which would ultimately result in her discharge. (UCBR's Findings of Fact, No. 11.)

After leaving her employment, Claimant applied for unemployment compensation benefits. The Hatboro Job Center (Job Center) denied Claimant benefits on the basis that Claimant voluntarily terminated her employment without cause of a necessitous and compelling nature pursuant to section 402(b) of the Unemployment Compensation Law (Law).[2] Claimant appealed to a referee and, following a hearing, the referee reversed the decision of the Job Center, concluding that Claimant satisfied her burden of proving that she left work for reasons of a necessitous and compelling nature. Employer appealed to the UCBR, which reversed the decision of the referee and denied benefits to Claimant. Claimant now appeals to this court.[3]

In a voluntary termination case, the claimant has the burden of proving that he or she left the employment for cause of a neces-

---

1. Employer has a policy which provides for disciplinary action, including immediate dismissal without warning, in cases where an employee refuses to obey an instruction or refuses to help on a special assignment. (UCBR's Findings of Fact, No. 8.)

2. Section 402(b) of the Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b), provides: "[a]n employe shall be ineligible for compensation for any week-...[i]n which his unemployment is due to

voluntarily leaving work without cause of a necessitous and compelling nature."

3. Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence, whether errors of law were committed or whether constitutional rights were violated. *Tom Tobin Wholesale v. Unemployment Compensation Board of Review*, 144 Pa.Cmwlth. 44, 600 A.2d 680 (Pa.Cmwlth.1991).

sitous and compelling nature. *Teeters v. Unemployment Compensation Board of Review,* 719 A.2d 380 (Pa.Cmwlth.1998). Although the Law does not define what constitutes "cause of a necessitous and compelling nature," our supreme court has described it as follows:

> "good cause" for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

*Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 358–59, 378 A.2d 829, 832–33 (1977). Whether one had a necessitous and compelling reason for quitting one's job is a legal conclusion and is fully reviewable by this court. *Id.* Under the circumstances here, we conclude that Claimant had such reason for leaving her employment.

■ In making this determination, we note that the inability of a parent to care for his or her child may constitute a necessitous and compelling reason for terminating employment. *Blakely v. Unemployment Compensation Board of Review,* 76 Pa.Cmwlth. 628, 464 A.2d 695 (Pa.Cmwlth.1983). We also note that domestic childcare problems are deserving of both recognition and individualized determinations. *King v. Unemployment Compensation Board of Review,* 51 Pa.Cmwlth. 396, 414 A.2d 452 (Pa.Cmwlth. 1980); *Wallace v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 342, 393 A.2d 43 (Pa.Cmwlth.1978).

■ With this in mind, we derive guidance from *Blakely* in determining that Claimant here had necessitous and compelling reasons for terminating her employment. In *Blakely,* the claimant worked the 7:15 a.m. to 3:45 p.m. shift as a machine packer for her employer. On January 27, 1982, after five years of working this shift, claimant's employer informed her that she was going to be laid off from work on February 15, 1982 and that, until that date, she was required to work the 3:45 to midnight shift. *Id.* The claimant, a mother of two school-age children, determined that the second shift would be unacceptable due to the difficulties involved in picking up her children at the end of the school day and because she could not obtain anyone to care for her children on such short notice. *Id.* Because of her child care difficulties, the claimant did not report to work for several days, beginning February 1, 1982. *Id.* On February 9, 1982, the employer informed the claimant that she had voluntarily abandoned her employment. *Id.*

The UCBR in *Blakely* determined that the claimant's child care problems constituted a necessitous and compelling cause for terminating her employment, but denied the claimant unemployment compensation benefits because the claimant had not discussed her child care difficulties with her employer and did not make sufficient attempts to sustain the employer-employee relationship. We reversed the UCBR's denial of benefits to the claimant, agreeing with the UCBR that the claimant's inability to care for her children constituted a necessitous and compelling cause for terminating her employment, and concluding that the claimant established that she made a reasonable effort to advise her employer of her child care problems and sufficiently attempted to sustain her employment when she reported the problem to her employer. *Id.*

As in *Blakely,* so too here, Claimant, as a single mother of two children with no way to arrange for alternate child care without prior notice, (*see* Referee's Findings of Fact, No. 19), had a necessitous and compelling reason for refusing to travel to Philadelphia to conduct the patient admission on March 12, 1998. Claimant's refusal to accept the March 12th assignment resulted in Claimant's suspension and ultimately the voluntary termination of her employment when Employer imposed the requirement that Claimant be available to work anywhere within the five county area on demand. Further, after reviewing the hearing testimony before the referee and the UCBR's findings of fact, it is apparent that Claimant made a reasonable effort to inform Employer of her child care problems. Indeed, Claimant testified as follows:

When I was asked to do the admission at 3:00 in the afternoon [on March 12, 1998], I didn't know where this nursing home was in west Philadelphia. And when I asked [my supervisor], she told me it was approximately 45 minutes away, especially given I didn't know where I was going. I told her then that I would be unable to do the assignment, because...[b]y going into west Philadelphia and doing an admission, which is an extended visit, I would not have gotten out of west Philadelphia until 5:30, 5:45 in the afternoon. My son is in day care, and day care closes at 6:00...which represented about a 45 mile travel from west Philadelphia in rush hour. So it was physically impossible for me to do [it]. I am a single parent, and I have no one else available to pick him up. And when I said I couldn't do it [for this reason], I was disciplined the following day.

(N.T. at 5–6.) Also, at the hearing, Claimant's supervisor acknowledged that Claimant told Employer about her child care problems. (H.T. at 9.) Thus, as in *Blakely*, we conclude that Claimant established that she made a reasonable effort to advise Employer of her child care problems and sufficiently attempted to sustain her employment.

 Employer argues that Claimant did not have necessitous and compelling reasons for terminating her employment because Claimant quit "in imminent threat of being dismissed," (H.T. at 5), when, in fact, the record contains no evidence that Claimant faced imminent discharge. We recognize that quitting work due to the possibility of discharge does not constitute necessitous and compelling reasons for voluntary termination, *see Charles v. Unemployment Compensation Board of Review*, 122 Pa.Cmwlth. 439, 552 A.2d 727 (Pa.Cmwlth.1989); however, we cannot ignore the compelling facts presented to us in this case. Here, as indicated above, at the time Employer requested that Claimant conduct the patient admission on March 12, 1998, Claimant immediately notified Employer of her child care problems. Without prior notice of the assignment, Claimant had no choice but to refuse it because she had a parental obligation to pick up her child and could not arrange for alternate child care on such short notice. In spite of this information, and aware of Claimant's predicament, Employer did nothing to cooperate with Claimant or to attempt to resolve the situation; instead, on March 13, 1998, Employer suspended Claimant for three days without pay, put her on probation for three months and informed her that she would be discharged if she refused another assignment. By taking this action, Employer made it clear to Claimant that it would not tolerate Claimant's child care situation and that Claimant's parental obligations were secondary to Claimant's employment obligations. Moreover, six days after Claimant's suspension, Claimant gave Employer two weeks notice of her intent to resign because her employment situation prohibited her from "meeting the childcare needs of [her] single parenthood situation." (O.R., Exhibit 4, Attachment 2.) Employer, however, made no effort to address or accommodate Claimant's needs during this two week period.

Surely, we cannot deny Claimant benefits where she demonstrated an earnest effort to overcome the employment obstacles placed upon her by her domestic responsibilities, but found it impossible to do so.[4] Accordingly, based on the foregoing reasons, we reverse.

### ORDER

AND NOW, this 22nd day of January, 1999, the order of the Unemployment Compensation Board of Review, dated June 30, 1998, is hereby reversed.

4. If Claimant had been given advance notice of the March 12, 1998 assignment so that she had time to make alternate child care arrangements, we might reach a different conclusion.