IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph R. Gumpher, III,              :
                    Petitioner       :
                                     :    No.  1735 C.D. 2016
          v.                         :
                                     :    Submitted:  June 9, 2017
Unemployment Compensation            :
Board of Review,                     :
                    Respondent       :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  August 30, 2017


          Joseph R. Gumpher III (Claimant) petitions *pro se* for review of the
September 30, 2016 order of the Unemployment Compensation Board of Review
(Board) affirming a referee's decision and holding that Claimant was ineligible for
unemployment compensation benefits under sections 401(f) and 402(b) of the
Unemployment Compensation Law (Law).[1]  We affirm.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§§801(f), 802(b).  Section 401(f) states that a claimant is ineligible for compensation if he earns less
than six times his weekly benefits rate at a subsequent job from which he is separated.  Section
402(b) of the Law states that a claimant is ineligible for compensation for any week in which his
unemployment is due to voluntarily leaving work without cause of a necessitous and compelling
nature.

Claimant worked as a junior painter for Epic Metals Corporation (Employer) from April 14, 2014, to March 11, 2016. When Claimant began work for Employer, he was informed that Employer may require him to work occasional evenings. Claimant's family consists of his wife and four children, one of whom is disabled and has special needs. Claimant's wife, who was not employed when Claimant began work with Employer, subsequently obtained a job at K-Mart, working from 3:30 p.m. to close. Claimant would watch the children in the evening and his wife would watch them during the day. (Referee's Findings of Fact Nos. 1-7.)

In December of 2015, Claimant was assigned to work a night shift. During that time period, while Claimant worked at night, his wife was permitted to switch her shift to daylight, although she was told that another request to do so would not be granted. In March of 2016, Employer advised Claimant that he would again be required to work the night shift from March 14-18, 2016. Claimant spoke to his supervisor and indicated that he would not be able to work a night shift because his wife, who was also working the night shift, would not be able to change her shift. (Referee's Findings of Fact Nos. 8-12.)

On March 14, 2016, Claimant posted on his Facebook page, "Time for a change, Work decided to have 2nd Shift, (Picked for that) don't like, so chose not to… it's choice you can make when retired. There are other jobs. time to relax for a while [sic]." (Reproduced Record (R.R.) at 72a; Referee's Finding of Fact No. 14.) Claimant then ceased going to work and did not inquire about returning. Claimant filed for unemployment compensation benefits, establishing a weekly benefit rate of $414.00. Although Claimant subsequently found other work, he did not earn six times his weekly benefit rate. (Referee's Findings of Fact Nos. 13-16.)

2

A referee determined that Claimant was ineligible for benefits under section 402(b) of the Law because, by his own Facebook posting, Claimant indicated he "chose not to" work, stating it was "time to relax for a while," and therefore did not have a necessitous and compelling reason for voluntarily quitting his employment. (R.R. at 77a.) The referee also found that Claimant was ineligible under section 401(f) of the Law because he had not yet earned six times his weekly benefit rate.[2] (R.R. at 76a.)

Claimant appealed to the Board, which affirmed the referee and adopted the referee's findings of fact and conclusions of law, but additionally stated:

> [C]laimant failed to make any inquiry if he could have [had] someone other than his mother watch his two younger children on the nights he was to work night shift. While the [C]laimant alleged he did not have the funds, the [C]laimant failed to credibly establish with sufficient specificity that he was financially unable to handle this limited child care issue. Rather, the Board agrees that the Claimant did not like it when he had to work the night shift and therefore simply did not make a reasonable effort to maintain his employment.

(R.R. at 100a.)

On appeal to this Court,[3] Claimant argues that the Board erred in concluding that he voluntarily left work without cause of a necessitous and compelling nature. Claimant contends that he had a necessitous and compelling reason to voluntarily terminate his employment because he needed to care for his

---

[2] In his brief, Claimant does not dispute this fact and it is therefore not at issue here.

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

3

children. Claimant contends that, had he gone to work, he would have broken the law because child "abandonment is against the law"[4] and his two older children "were not responsible enough to properly provide suitable care." (Claimant's Brief at 11.) Claimant further argues that his wife would have been fired from her job if he had gone to work and states, "There is no law that says an employee can force a spouse to terminate their [sic] employment for their [sic] needs." (Claimant's Brief at 12.) Although he does not expand on this argument, Claimant is presumably arguing that, had his wife again requested to switch to day shift to accommodate his shift change, she would have been fired.

This Court has previously held that the inability of a parent to care for his child may constitute a necessitous and compelling reason for terminating employment. *See Ganter v. Unemployment Compensation Board of Review*, 723 A.2d 272 (Pa. Cmwlth. 1999). However, "[t]ypically, in order to prove a necessitous and compelling reason to quit, a claimant must establish that [he] exhausted all other alternative childcare arrangements, such as making a concerted effort to find another baby-sitter or locate a suitable day care center." *Shaffer v. Unemployment Compensation Board of Review*, 928 A.2d 391, 394 (Pa. Cmwlth. 2007).

In *Shaffer*, this Court faced a similar issue in which a claimant voluntarily terminated her position due to childcare issues. There, the claimant's employer relocated approximately 10 miles away, and, as a result, the claimant's in-laws, who provided daycare services for her child, were no longer able to continue

---

[4] Claimant refers the Court to the regulations of the Department of Human Services, namely 55 Pa. Code §3490.4, which is the definition section of the Child Protective Services subchapter of the Children, Youth, and Families Manual. This subchapter addresses child abuse and the duty of county agencies to investigate reports of abuse and issue indicated/founded reports under the Child Protective Services Law, 23 Pa.C.S. §§6301 − 6386. Notably, this regulation does not discuss abandonment of a child.

4

watching the child because of the additional commute time. *Id.* at 392-93. We upheld the denial of claimant's benefits, noting:

> The record here reveals that [c]laimant investigated only one daycare facility for her daughter, which she determined was not a cost effective alternative, but [c]laimant did not offer evidence that she looked into any *other* childcare arrangements. Moreover, [c]laimant offered no evidence that she explored alternative arrangements for her son's before and after school care. Under these circumstances, we conclude that [c]laimant did not establish that she made a concerted effort to find alternative childcare arrangements. Therefore, the [Board] did not err in holding that [c]laimant failed to meet her burden of proving that she had cause of a necessitous and compelling reason to voluntarily terminate her employment.

*Id.* at 394 (emphasis in original).

Here, the record reveals that Claimant did even less to investigate whether there were alternative childcare arrangements that could have been made which would have permitted him to go to work. When asked whether he could have received help from a family member to watch the children, Claimant responded, "The only one that could assist me would be my mother but she was unable to help me that week." (R.R. at 58a.) When asked about the possibility of paying someone to watch his children, Claimant simply stated, "Funds were not available for that."[5] (R.R. at

---

[5] In his brief, Claimant curiously takes issue with the Board's finding that "claimant alleged he did not have the funds [to afford a babysitter]." Claimant demands to know "what FACT based review of finding's [sic] did this allow the Board to deny me my benefits based on my available funds. There was no request or submission of my income." (Claimant's Brief at 10.) Claimant, however, ignores that he, himself, testified to this fact in support of his argument that he had no other options but to miss work in order to supervise his children. Moreover, it was Claimant's and not the Board's burden to produce evidence demonstrating that his voluntary termination was for a necessitous and compelling reason—in this case, that Claimant exhausted all other alternative childcare arrangements. *See Brown v. Unemployment Compensation Board of Review*, 780 A.2d 885, 888 (Pa. Cmwlth. 2001).

58a.)  Claimant presented no evidence that he inquired into the cost of a babysitter or that, had he found one, he would have been unable to afford paying him or her for that week.

Because Claimant has failed to establish that he made a concerted effort to find alternative childcare arrangements, we find that the Board did not err in determining that Claimant failed to meet his burden of proving a necessitous and compelling reason for voluntarily terminating his employment.

In his brief, Claimant also argues that the Board improperly relied on his Facebook posting.  In response, Employer argues that the referee's reliance on the posting was permissible and cites this Court's decision in *Harnish v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 883 C.D. 2010, filed March 17, 2011),[6] in which we affirmed the Board's decision to deny a claimant benefits based on, *inter alia*, her violation of the employer's policy on dishonesty.  There, the employer determined that the claimant was dishonest when she told her employer that she had not held a meeting with other employees at her house because the employer confirmed that such a meeting had taken place by viewing various Facebook posts. *Harnish*, slip op. at 3.

Similarly, in *VanKersen v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 1771 C.D. 2014, filed April 21, 2015), we analyzed the contents of a claimant's Facebook post regarding a motor vehicle accident to determine whether there was substantial evidence supporting a referee's finding that

---

[6] Pursuant to Commonwealth Court Internal Operating Procedure 414(a), 210 Pa. Code §69.414(a), an unreported Commonwealth Court panel decision issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.  *See Lil Shining Stars, Inc. v. Department of Human Services*, 140 A.3d 83, 94 n.7 (Pa. Cmwlth. 2016).

the claimant had admitted the accident he was involved in could have been avoided. *VanKersen*, slip op. at 3-5.

Here, Claimant does not dispute that he authored the Facebook post and expressed regret for having done so stating, "I made it, I made it out of haste and regret, so [sic]. It is my personal Facebook page." (R.R. at 62a.) Rather, Claimant simply argues that he "cannot believe that this system would allow the soul [sic] denial of benefits solely based on the Facts presented by Epic metals on a Social Media web page." (Claimant's Brief at 11.) Thus, Claimant's argument does not appear to be that the referee's finding of fact that Claimant made the statement was unsupported by substantial evidence, but rather he appears to argue that the referee should not have considered the post at all.

Initially, we note that Claimant is raising this issue for the first time on appeal as he made no objection to the introduction of the Facebook post during the hearing. Furthermore, Claimant does not present any authority for this proposition. Nor does he address the fact that this Court has considered the content of social media posts in previous cases when determining whether there was substantial evidence to support a finding of fact. Moreover, the basis of the Board's ineligibility determination was that Claimant had failed to demonstrate that he could not obtain other childcare arrangements for that week. Thus, although the post provides some background information regarding the circumstances of Claimant's voluntary termination, it is not the finding upon which the Board based its benefit ineligibility determination.

Claimant also takes issue with two exhibits introduced at the hearing. The first was a letter, dated March 21, 2016, from Employer's general counsel, Laurence R. Landis, to Claimant confirming Claimant's resignation on March 17,

7

2016. (R.R. at 12a.) The second was an e-mail from Employer's payroll manager to an unemployment compensation claims examiner with the Pennsylvania Department of Labor and Industry stating, *inter alia*, "When the need for a second shift ended [Claimant] did not return for the first shift and indicated he was resigning." (R.R. at 16a.) Claimant cites these exhibits as a demonstration of Employer's "intent to mislead the facts" because, Claimant alleges, he never gave them "verbal intent to resign." (Claimant's Brief at 12.)

Regardless of the merits of these arguments, we need not address them as the referee sustained objections by Claimant's attorney to these documents during the hearing on the grounds of hearsay. Moreover, these documents were not referenced at any point in the referee's findings of fact or conclusions of law, nor did they constitute the basis for the Board's determination. (R.R. at 53a, 75a-77a, 100a.)

Finally, Claimant takes issue with the referee's finding that "Claimant did not return to work, did not ask to be returned to work, and applied for UC benefits effective July 3, 2016 . . . ." (Referee's Finding of Fact No. 15.) Although he admits he did not report for work the following Monday, Claimant suggests that he intended to reach out to Employer about returning to work that week, expecting to receive a warning for his absence during the previous week, but, before he had a chance to call Employer, he received the letter from Mr. Landis confirming his resignation. In other words, Claimant asserts that, had he not received the March 21, 2016 letter from Mr. Landis acknowledging his resignation, he would have returned to work the following week.

However, Claimant's argument, even if true, does not dispute the content of the referee's finding of fact. That is to say, Claimant does not argue that he did attempt to call Employer or that he did return to work. Instead, Claimant is merely

8

recounting the underlying reason for his decision not to do either. Therefore, Claimant has alleged no reviewable error in this finding of fact.

Accordingly, for the reasons set forth above, the order of Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cosgrove dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph R. Gumpher, III, :
                Petitioner :
                 :   No. 1735 C.D. 2016
        v. :
                 :
Unemployment Compensation :
Board of Review, :
                Respondent :

## ***ORDER***

AND NOW, this 30th day of August, 2017, the September 30, 2016 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge