IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie Silvers,                              :
                    Petitioner              :
                                            :
        v.                                  :
                                            :
Unemployment Compensation                   :
Board of Review,                            :     No. 1436 C.D. 2018
                    Respondent              :     Submitted: March 15, 2019


BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON              FILED: July 9, 2019


          Jamie Silvers (Claimant) petitions for review from the October 12, 2018 order of the Unemployment Compensation Board of Review (Board) that reversed the Referee's decision finding that she was not ineligible for unemployment compensation benefits. The Board concluded that Claimant was ineligible for benefits because she did not meet her burden of showing that she terminated her employment for a necessitous and compelling reason pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] Upon review, we affirm.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides that a claimant is ineligible for compensation if her unemployment is due to her voluntarily leaving employment without cause of a necessitous and compelling nature. *Id*.

Claimant was employed as a full-time primary therapist by UHS of Doylestown LLC (Employer) from September 12, 2016 until November 17, 2017. Board Findings of Fact (F.F.___) 1. After November 17, 2017, Claimant was out of work on an approved maternity leave and, prior to the expiration of her leave, notified Employer by email dated January 23, 2018 of her decision to terminate her employment. F.F. 2-3. In her January 23rd email, Claimant explained:

> So I have been going back and forth about this, and have really struggled with this difficult decision, but I have decided that I am not going to be returning to [Employer]. . . . The main issue is the *distance* and daily commute from my home. While I know I could send [my child] to daycare close(r) to Doylestown; in reality, I just don't want to be that far away from home (and would prefer [my child] be close as well where I would have *backup* help if needed.).

Employer's Exhibit (Ex.) 1 (emphasis in original).

After terminating her employment, Claimant applied for benefits with the Duquesne Unemployment Compensation Service Center (Center). The Center issued a notice of determination denying benefits pursuant to Section 402(b) of the Law. Certified Record (C.R.) Item No. 5, Notice of Determination dated 2/15/18 (Notice of Determination) at 1. Claimant appealed the Center's decision to the Referee, and the Referee held a hearing on the matter. C.R. Item. No. 9, Transcript of Testimony (T.T.___) dated 4/4/18.

At the hearing, Claimant testified that she worked an 8-hour shift for Employer, from 8:30 a.m. to 5:00 p.m., and she had a 30-mile one-way commute from her residence. F.F. 6 & 7; T.T. 5. Claimant is a single mother with no partner, and receives assistance from her mother with child care. F.F. 5; T.T. 5. Due to her commute, Claimant would not get to the daycare near her home by the closing time

2

of 6 p.m. to pick up her child. F.F. 7; T.T. 5. Claimant would have found a daycare facility closer to her work location, but if there was an emergency requiring backup help, her mother was not willing to pick up her child. F.F. 6; T.T. 5 & 11. Claimant indicated that she has several babysitters that she uses for child care and that she is able and available for work. F.F. 10; T.T. 10. Prior to quitting, Claimant spoke to her supervisor about her child care situation. F.F. 9; T.T. 5. At the hearing, Employer also presented a witness, her supervisor, who confirmed Claimant's last day of work in the office as November 17, 2017 and provided a copy of Claimant's January 23rd email for the record. T.T. 12-13.

After the hearing on the matter, the Referee issued a decision reversing the Center's determination and granting benefits. Referee's Decision/Order dated 4/25/18 (Referee's Decision) at 2. The Referee concluded that Claimant voluntarily left her employment due to insurmountable child care issues and that Employer did not offer any evidence that it could resolve Claimant's problem. *Id.* Employer appealed the Referee's decision to the Board, which reversed. The Board concluded that Claimant did not meet her burden of establishing a necessitous and compelling reason for terminating her employment. Board's 10/12/2018 Opinion (Board's Opinion) at 3. The Board explained:

> The [C]laimant's fears about making it to the daycare located by her residence by 6 p.m. and not having a backup in the event of an emergency were speculative, as the [C]laimant resigned prior to the expiration of her leave of absence and never returned to work. The [C]laimant has not established that her childcare [sic] issues were insurmountable and she had no other choice but to quit her employment. The [C]laimant left her employment for personal reasons and has not met her burden.

3

Board's Opinion at 3. Claimant petitions this Court for review.[2]

Before this Court, Claimant contends that the Board erred when it concluded that she failed to establish a necessitous and compelling reason for quitting her job because she produced evidence showing that she was not able to obtain suitable care for her child prior to terminating her employment. Claimant's Brief at 10 & 12. Claimant testified that she had a lengthy commute and that she could not secure child care near her residence, as she would not be able to pick up her child before the daycare facility near her residence closed. *Id*. Claimant further testified that had she obtained care near her place of employment, she would not have anyone available to pick up her child should an emergency arise. *Id*.

To establish cause of a necessitous and compelling nature, a claimant has the burden of showing that: (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve her employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008). Whether one had a necessitous and compelling reason for quitting one's job is a legal conclusion and is fully reviewable by this Court. *Ganter v. Unemployment Comp. Bd. of Review*, 723 A.2d 272, 274 (Pa. Cmwlth. 1999).

In her January 23rd email to Employer in which she terminated her employment, Claimant explained, "[t]he *main issue is the distance and daily commute from my home*. While I know I could send [my child] to daycare close(r) to Doylestown; in reality, *I just don't want to be that far away from home . . . .*"

---

[2] This Court's review is limited to determining whether constitutional rights were violated, whether errors of law were committed, and whether findings of fact are supported by substantial evidence. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 262, n.1 (Pa. Cmwlth. 2008). In unemployment compensation proceedings, the Board is the ultimate finder of fact. *Id*.

4

Employer's Ex. 1 (emphasis added). Claimant similarly testified, "I voluntarily left the job for personal reasons" and cited the daily commute as the "main issue," along with her child care needs and the logistics of having help with the child care given the distance of her home from her place of employment. T.T. 4 & 6.

Even if we were to conclude that Claimant's concerns regarding her child care options in light of her commute produced real and substantial pressure to terminate her employment, Claimant did not sustain her burden to establish cause of a necessitous and compelling nature because Claimant failed to produce legally sufficient evidence showing that she made a reasonable effort to preserve her employment. *See Procito*, 945 A.2d at 264. "The failure of an employee to *take all reasonable* steps to preserve employment results in a voluntary termination." *Dopson v. Unemployment Comp. Bd. of Review*, 983 A.2d 1282, 1284 (Pa. Cmwlth. 2009). Our Supreme Court, and this Court, have concluded that a claimant meets this burden when the claimant produces evidence showing that she made an earnest effort to find child care so she can meet her work responsibilities and that she provided the employer with notice of her problem to enable employer to offer an accommodation. *Truitt v. Unemployment Comp. Bd. of Review*, 589 A.2d 208 (Pa. 1991); *Ganter*, 723 A.2d at 272.

For example, in *Truitt*, our Supreme Court found that the claimant made a reasonable effort to preserve her employment when the claimant made extensive efforts to find replacement child care and her employer refused to offer her any accommodation. *Truitt*, 589 A.2d at 210. The claimant in *Truitt* was a single mother of two children and was employed as a waitress. *Id*. at 209. The claimant's babysitter was her mother, who regularly cared for her children, including during the claimant's night shift from 4:30 p.m. to 3:00 a.m. *Id*. Unexpectedly, and two days

5

prior to the claimant's next scheduled night shift, her babysitter suffered an injury rendering her unable to care for the claimant's children. *Id*. The claimant made inquiries of her sisters, former babysitters, and a daycare center in an effort to find replacement care for her children, but no care was available after 6:00 p.m. when she was next scheduled to work. *Id*. The claimant's mother also searched and made inquiries to find replacement child care and, because the claimant was new to her position, the claimant had not accrued any sick leave or vacation time to take a leave of absence for that shift. *Id*. "Not willing to risk the safety and well-being of her children by leaving them home alone until 3:00 in the morning," the claimant terminated her employment. *Id*. In concluding that the claimant made reasonable efforts to preserve her employment, our Supreme Court noted the claimant's efforts to find replacement child care, noting that "any reasonable person who had to find child care on this short notice" would have done what the claimant did and that "she sought to arrange a different schedule with her employer," but the employer declined to accommodate her either temporarily or permanently. *Id*. at 210.

Similarly, this Court in *Ganter* concluded that the claimant made a reasonable effort to preserve her employment when she quit after her employer requested the claimant to perform an assignment, without advance notice, that would have prevented her from picking up her child from daycare on time. *Ganter*, 723 A.2d at 275. The claimant in *Ganter* was employed as a visiting nurse and was a single mother of two with a young son in daycare. *Id*. at 273. On the occasions when asked to work overtime, the claimant picked her son up from daycare, took him home, and had her daughter watch him. *Id*. The claimant's employer had recently relocated the office approximately 30 miles from the claimant's residence and expanded its coverage area to encompass a five-county area, including

6

Philadelphia County. *Id.* The claimant continued to work for her employer after this corporate reorganization and picked up her child from daycare by 6:00 p.m. *Id.* One afternoon, at approximately 2:30 p.m., the employer called the claimant at the Conshohocken office and asked the claimant to travel from its office to Philadelphia to do a patient admission. *Id.* The claimant refused the assignment, explaining that she would not have enough time to travel to Philadelphia, conduct the patient intake interview and admission, and return to pick up her child from daycare by 6:00 p.m. *Id.* The next day, the employer suspended the claimant for three days without pay and advised the claimant that she would be put on probation for a period of three months, during which time any further refusal of assignment would result in her discharge. *Id.* Several days later, the claimant gave the employer two weeks' notice that she would be resigning from her position because she felt that the disciplinary action taken against her was too harsh and felt that she would be unable to meet employer's expectation that she be available to work anywhere in the five-county area on demand. *Id.*

In concluding that the claimant made reasonable efforts to preserve her employment, this Court in *Ganter* reasoned that at the time the employer requested the claimant to conduct the patient admission, the claimant immediately notified her employer of her child care problems. *Ganter*, 723 A.2d at 275. This Court further explained:

> Without prior notice of the assignment, [c]laimant *had no choice* but to refuse it because she had a parental obligation to pick up her child and *could not arrange for alternate child care on such short notice*. In spite of this information, and aware of [c]laimant's predicament, *[e]mployer did nothing to cooperate with [c]laimant or attempt to resolve the situation*; instead . . . [e]mployer suspended [c]laimant for three days without pay, put her

7

on probation for three months and informed her that she would be discharged if she refused another assignment. By taking this action, [e]mployer made it clear to [c]laimant that it would not tolerate [c]laimant's child care situation and that [c]laimant's parental obligations were secondary to [c]laimant's employment obligations. Moreover, six days after [c]laimant's suspension, [c]laimant gave [e]mployer two weeks' notice of her intent to resign because her employment situation prohibited her from meeting the childcare needs of her single parenthood situation . . . . Employer, however, made no effort to address or accommodate [c]laimant's needs during this two week period.

*Id*. at 275 (emphasis added) (quotations omitted). This Court explained that it would not deny the claimant benefits where "she demonstrated an earnest effort to overcome the employment obstacles placed upon her by her domestic responsibilities, but found it impossible to do so." *Id*. Though this Court granted benefits, it further noted in *Ganter* that had the claimant been given advance notice of the assignment, so that she had time to make alternative child care arrangements, the Court might have reached a different conclusion. *Ganter*, 723 A.2d at 275, n.4.

Here, however, Claimant did not establish that she made an earnest effort to overcome her employment obstacles resulting from her child care responsibilities. To this end, Claimant testified that with regard to her efforts to arrange child care:

*I started to arrange child care* prior to leaving on maternity leave. Given the distance from my home, which is 30 miles each way, and I'm scheduled to work at the facility around 8:30 to 5:00 p.m. An eight-hour shift. I would not get home in time to pick up my daughter from daycare because most facilities close at 6:00 and my commute is about an hour, an hour and a half, especially on the way home. *If I were [sic] to find something close*

8

to the office in Doylestown [closer to work], which I did *start to pursue*, my mom would not be able to get her in the event of an emergency.

T.T. 5 (emphasis added). Claimant testified that she brought her concerns to employer as follows:

> [Referee]: . . . so, did you speak with anyone at the Employer about, you know, issues about distance to see if there was anything they could do for you?
>
> [Claimant]: I spoke with my co-workers, but I also know given the nature of the position. . .
>
> [Referee]: Well, not co-workers. Anyone in authority, a manager, or human resources or anything like that?
>
> [Claimant]: I did not speak with human resources but I did talk to a supervisor. But given the nature of the position, it's an in-patient hospital, it's not like I can telecommute or . . .
>
> [Referee]: Yeah. But, you sometimes people can, you know, get different hours, or, you know, have some flexibility, but. . . All right. So, that you didn't bring up to explore that?
>
> [Claimant]: Well, I did bring that up. It's just a matter of I had certain meetings I have to attend to at certain hours. So, it's not like I can be flexible with the time.

T.T. 6-7. Claimant's supervisor testified that Claimant "voluntarily left her job" for the reasons provided in her email, which included the logistics of child care. T.T. 12. Claimant's supervisor also testified that Employer became aware of the

9

particular reason Claimant was leaving "when she put it in writing[,]" referring to Claimant's resignation email. *Id.*

But, as Claimant stated, she "started" to arrange child care near her home and started to "pursue" child care near her office but decided not to complete this process, as she preferred to be closer to home. Employer's Ex. 1. Though the Board found, and Claimant testified, that she mentioned her child care issue to her supervisor, Claimant provided no details regarding the conversation. Claimant stated that she brought up flexibility, but Claimant did not specify whether her supervisor told her that her position did not allow for an accommodation or whether Claimant reached that conclusion on her own.

Further, Claimant acknowledged that she could have used the daycare near her office but had a concern that her mother would not be available to pick up her child in the event of an emergency. T.T. 5. Though Claimant expressed this concern, as noted by the Board, Claimant did not attempt to find any other individual who could retrieve her child from daycare in the event of an emergency, nor did she establish that she attempted to hire a babysitter to watch her child before terminating her employment. *See Shaffer v. Unemployment Comp. Bd. of Review*, 928 A.2d 391, 394 (Pa. Cmwlth. 2007) (stating that claimant "*must* establish that she exhausted *all*" alternative child care arrangements and rejecting claimant's request for benefits when claimant investigated only one daycare but did not offer evidence that she considered any other child care arrangements) (emphasis added). Further, Claimant did not establish that she considered any other options that may have been available to her in the unlikely event of an emergency, such as taking accrued vacation time or a leave of absence to pick up her child from daycare, before deciding to terminate her employment. *See Truitt*, 589 A.2d at 209 (noting that the claimant had not

accrued any sick leave or vacation time to allow her to take a leave of absence to deal with her child care problem).

Based on the evidence presented by Claimant, we agree with the Board that Claimant did not meet her burden of showing a necessitous and compelling reason for terminating her employment. The evidence presented demonstrated that Claimant did not make a legally sufficient effort to preserve her employment. As a result, the Board's denial of benefits under Section 402(b) of the Law was not in error.

Accordingly, we affirm.[3]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[3] Nevertheless, Claimant argues that the Board erred by ignoring her second reason for terminating her employment, that is, because of the working conditions in the office prior to and throughout her pregnancy. Claimant's Brief at 14-15. However, Claimant testified that the main reason for terminating her employment related to her commute and the logistics of child care in light of her commute. T.T. 6; C.R. Item No. 2, Claimant Questionnaire. The Board found that Claimant left her employment for personal reasons. Board's Opinion at 3. Therefore, the Board did not err by failing to address the additional reason Claimant provided. *See Baird v. Unemployment Comp. Bd. of Review*, 372 A.2d 1254, 1258 (Pa. Cmwlth. 1977) (explaining that the Board's finding as to the reason claimant terminated his employment necessarily excludes a finding that he terminated for the reasons he provided). For this reason, Claimant's additional argument that the Board's Finding of Fact Number 10, relating to Claimant securing private babysitters, was inaccurate and misconstrues the testimony, and likewise lacks merit as Claimant quit for personal reasons.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie Silvers,                              :
                    Petitioner            :
                                            :
          v.                                :
                                            :
Unemployment Compensation                   :
Board of Review,                            :      No. 1436 C.D. 2018
                    Respondent             :

# O R D E R

AND NOW, this 9th day of July, 2019, the October 12, 2018 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge