# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George B. Yancura,                           :
                          Petitioner         :
                                             :
          v.                                 :     No. 1869 C.D. 2019
                                             :     Submitted: July 24, 2020
Unemployment Compensation                    :
Board of Review,                             :
                          Respondent         :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge[1]
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  March 5, 2021**


          Petitioner George B. Yancura (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board), dated November 27, 2019, denying Claimant benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[2] relating to voluntarily leaving work without cause of a necessitous and compelling nature.  We now affirm.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Claimant applied for unemployment compensation benefits on July 24, 2019, after separating from his full-time position as Manager of Internet Technology and Network Administration with University of Pittsburgh (Employer) on July 19, 2019. (Certified Record (C.R.), Item No. 2 at 1-2; C.R., Item No. 8 at 4.) In his application for unemployment compensation benefits, Claimant stated that he quit his position because of health issues, namely "severe depression related to work environment." (C.R., Item No. 2 at 3.) The Duquesne UC Service Center (Service Center) denied Claimant benefits pursuant to Section 402(b) of the Law, concluding that Claimant voluntarily quit his position for personal reasons related to working conditions. (C.R., Item No. 4.) Claimant filed a timely appeal of the Service Center's determination, and a hearing was scheduled before an Unemployment Compensation Referee (Referee). (C.R., Item Nos. 5, 7.) Claimant and Employer's tax representative, Kathleen Travers, appeared at the hearing. (C.R., Item No. 8 at 1.) Claimant testified on his own behalf regarding the circumstances surrounding his separation from employment,[3] and Employer declined to present any witness testimony.

The Referee issued a decision concluding that Claimant was ineligible for benefits pursuant to Section 402(b) of the Law. (C.R., Item No. 9.) In so doing, the Referee issued the following findings of fact:

> 1. The claimant was employed full[ ]time as a Manager [of] IT and Network Infrastructure with the University of Pittsburgh from November 1, 2015[,] through January 16, 2019 . . . .
>
> 2. The claimant applied for and [was] approved [for] 6 months of short-term disability.

---

[3] At the Referee hearing, Claimant also introduced an email, sent July 12, 2019, which the Referee admitted without objection and labeled "Claimant Exhibit #2." (C.R., Item No. 8 at 7, 12.)

3. The claimant exhausted his entitlement to short-term disability and expected to return to work on July 15, 2019.

4. On Friday, July 12, 2019, the claimant emailed the employer informing that his doctor had not released him to return to work, asked for details concerning his return to work relevant to position and pay, informed that he had reservations about returning to employment with the University of Pittsburgh, and provided the employer with a list of job-related grievances.

5. The claimant did not file for long-term disability or provide the employer with any medical documentation to substantiate his continued absence from work.

6. The claimant did not report for work as expected on July 15, 2019.

7. On July 17, 2019, the Director of Employee & Labor Relations [(Director)] sent email correspondence to the claimant informing that he did not return to work on Monday, July 15, 2019[,] as expected, informed that she was not aware of any approved leave for the claimant's current status, and informed that the claimant would be terminated from his position for job abandonment effective July 22, 2019[,] unless he contacted the employer by close of business Friday, July 19, 2019[,] to explain his current status and availability to report to work as well as a satisfactory explanation for his failure to properly call off work and failure to respond to attempts made to contact the claimant.

8. The claimant did not contact the employer by Friday, July 19, 2019[,] to explain his current status and availability to report to work but rather resigned his position effective July 19, 2019.

(*Id*. at 1-2.) The Referee explained:

In the present case, the claimant argues that he was unable to return to work and forced to quit under threat of termination. The claimant's argument is found to be without merit. The claimant was aware that his short-term disability would end after six months but failed to address his concerns about return to employment with the employer until Friday, July 12, 2019[,] just prior to his expected return to work date; elected not to apply for long-term disability; failed to provide the employer with any medical documentation to support his continued absence from work; and failed to contact the employer as requested to explain his current status and availability to report for work.

3

> For these reasons, the claimant failed to take the necessary and reasonable steps to preserve his employment relationship and has not met his burden of proving cause of necessitous and compelling nature for voluntarily leaving employment. Therefore, the claimant's request for [unemployment compensation] benefits must be denied in accordance with [S]ection 402(b) of the Law.

(*Id*. at 2-3.)

Claimant appealed the Referee's decision to the Board. (C.R., Item No. 10.) The Board adopted the Referee's findings of fact and conclusions of law and affirmed the Referee's decision. (C.R., Item No. 15.) The Board concluded that the "record lacks sufficient, credible evidence to prove that the claimant had adequate health reasons to resign, that his workplace was intolerable, and that he took reasonable measures to preserve his employment." (*Id*. at 1.) Claimant now petitions this Court for review.

On appeal,[4] Claimant argues: (1) the Referee and Board erred as a matter of law or abused their discretion in failing to provide Claimant an opportunity to question Employer about the circumstances surrounding his resignation; and (2) the Board erred in concluding that Claimant voluntarily terminated his position.[5]

We first consider the question of Claimant's opportunity to question Employer. Claimant essentially contends that, because Employer did not produce any witnesses at the hearing, the Referee and Board improperly denied Claimant the opportunity to elicit testimony from Employer's employees regarding his separation from employment. At the outset of the hearing, the Referee apprised Claimant of

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

[5] Claimant does not dispute any of the factual findings, and, therefore, those findings of fact are binding on appeal. *See Campbell v. Unemployment Comp. Bd. of Rev.*, 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997).

4

his right to call witnesses and to question both his own witnesses and the witnesses of the opposing party. (C.R., Item No. 8 at 1.) After the Referee asked Claimant if he was aware of his rights, Claimant responded: "I am now." (*Id.*) Accordingly, Claimant was made aware of his right to call witnesses and to question them regarding his employment separation, but Claimant only presented his own testimony. Prior to the hearing, he did not attempt to secure the attendance of any of Employer's employees—through agreement of the parties or via subpoena—nor during the hearing did he request additional time to secure such witnesses. In the absence of any request, we simply cannot conclude that the Referee or Board erred as a matter of law.[6]

Next, we consider whether Claimant voluntarily terminated his position. Under Section 402(b) of the Law, an employee is ineligible for unemployment benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." In a voluntary termination case, the claimant has the burden of proving the right to unemployment compensation. *Bowman v. Unemployment Comp. Bd. of Rev.*, 410 A.2d 422, 423 (Pa. Cmwlth. 1980). If the claimant asserts that the separation was not due to a voluntary termination, the burden of proof similarly lies with the claimant to make this showing. *Id.* Whether an employee voluntarily terminates his employment is a question of law to be determined by this Court. *Rettan v. Unemployment Comp. Bd.*

---

[6] An unemployment compensation referee is obligated to issue subpoenas for witnesses upon request and where such issuance would lead to relevant and probative testimony. *See AVCO Corp. v. Unemployment Comp. Bd. of Rev.*, 739 A.2d 1109, 1116 (Pa. Cmwlth. 1999). If the request is denied, a claimant can challenge the referee's denial on appeal to the Board or to this Court. *See Miller v. Unemployment Comp. Bd. of Rev.*, 512 A.2d 797, 798-99 (Pa. Cmwlth. 1986). Here, had Claimant made such a request and been denied, this Court could have reviewed the denial for an error of law or abuse of discretion.

*of Rev.*, 325 A.2d 646, 647 (Pa. Cmwlth. 1974). Voluntary termination is found where, without action by the employer, an employee resigns, leaves, or quits his employment. *Fishel v. Unemployment Comp. Bd. of Rev.*, 674 A.2d 770, 772 (Pa. Cmwlth. 1996). Where an employee resigns his position to avoid the possibility of termination by the employer, such resignation is considered a voluntary termination on behalf of the employee. *Charles v. Unemployment Comp. Bd. of Rev.*, 552 A.2d 727, 729 (Pa. Cmwlth. 1989). On the other hand, in order to show that a discharge occurred, an employer's language to that effect must contain the immediacy and finality of a termination. *Fishel*, 674 A.2d at 772.

Claimant essentially contends that he was effectively discharged because Employer required that Claimant return to work while knowing that Claimant was not approved for work by his doctor. Claimant argues that "it was improper for . . . [Employer] to demand his return to work or be terminated for job abandonment under these conditions while [Claimant] was still not released to return to work." (Pet'r's Br. at 5.) Claimant asserts, therefore, that his resignation was caused by Employer's ultimatum. Contrary to Claimant's assertion, however, the Director's July 17, 2019 email did not state that Claimant was required to return to work by July 19 or 22, 2019, to prevent termination. Rather, the Director's email stated that Claimant had to *contact* the Director by Friday, July 19, 2019, to provide information regarding Claimant's continued absence from work despite Claimant's medical leave having ended on July 14, 2019, or else Claimant would be terminated for job abandonment the following Monday, July 22, 2019. (C.R., Item No. 8 at 26.) It is clear to this Court that the Director's language does not have the immediacy and finality of a termination. *See Fishel*. The Director gave Claimant the option of contacting her and providing information concerning his health, his medical leave,

6

and his reasons for not returning to work. If Claimant failed to do so, only then would he be terminated. Claimant opted to resign via email on July 19, 2019. (C.R., Item No. 8 at 30.)

Claimant's testimony at the Referee hearing, however, was that he resigned because he had already provided such information in his email on July 12, 2019, and the Director seemingly ignored his email and his concerns regarding unhealthy working conditions. (C.R., Item No. 8 at 16.) According to Claimant, he was, therefore, left with little choice. We disagree. Claimant's bare assertion in his July 12, 2019 email that his doctor had not cleared him for work does not absolve Claimant of his responsibility to provide the Director with more information or to appear at work. Claimant had not contacted Employer to request additional time off, and he had not applied for long-term medical leave. Claimant also did not provide in the July 12, 2019 email any note or medical evaluation from his doctor expressing that Claimant was unable to appear for work beginning July 15, 2019.[7] While Claimant insisted at the Referee hearing that he was seeking a different position with Employer, which course of action was apparently recommended by Claimant's doctor, Claimant admitted that he had not submitted any applications or made any effort to obtain such a position apart from contacting Employer on July 12, 2019.[8] (C.R., Item No. 8 at 21-22.) Finally, Claimant waited until July 12, 2019—three

---

[7] While Claimant argues in his brief that he produced a statement from his doctor at the Referee hearing expressing that he had not been released to return to work in mid-July 2019, the note was dated September 26, 2019, and Claimant did not provide anything similar to Employer. (C.R., Item No. 8 at 11, 18, 29.)

[8] Moreover, any indication in Claimant's July 12, 2019 email that he was seeking a different position with Employer was likely far too cryptic for the Director to ascertain, as Claimant's email only states that he was uncomfortable returning to his old position, and Claimant specifically wrote that he had "serious reservations about returning to *any* position at [Employer]." (C.R., Item No. 8 at 27 (emphasis added).)

7

days before his expected return to work—to broach these issues with Employer. Accordingly, we cannot accept Claimant's argument that he was left with no choice but to resign when Employer gave Claimant the option of providing further (and maybe redundant) information regarding his health condition to avoid job abandonment and Claimant had the option of requesting additional time off, applying for long-term medical leave, or applying for a different position with Employer prior to July 15, 2019.

Pursuant to Section 402(b) of the Law, a claimant who voluntarily quits his employment may be eligible for unemployment compensation benefits if the claimant had cause of a necessitous and compelling nature to do so. The claimant bears the burden of proving cause of a necessitous and compelling nature. *Fitzgerald v. Unemployment Comp. Bd. of Rev*., 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). Whether a claimant meets this burden is a question of law for this Court to resolve. *Wasko v. Unemployment Comp. Bd. of Rev.*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985). To establish cause of a necessitous and compelling nature, a claimant must show: (1) circumstances existed that produced real and substantial pressure for the claimant to terminate his employment; (2) like circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) a reasonable effort was made by the claimant to preserve his employment. *Procito v. Unemployment Comp. Bd. of Rev.*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008). Where other compelling or contributory circumstances are absent, a voluntary termination, done solely to avoid the possibility of a discharge, does not constitute a necessitous and compelling reason to quit. *See Ganter v. Unemployment Comp. Bd. of Rev.*, 723 A.2d 272, 275 (Pa. Cmwlth. 1999).

8

Presently, it is apparent that Claimant's argument on appeal focuses almost entirely on the question of whether he was terminated.[9]  It can be fairly suggested by Claimant's brief, however, that Claimant also contends that he had cause of a necessitous and compelling nature to voluntarily terminate his employment because he was not medically cleared to return to work.  *See* Pa. R.A.P. 2116 ("[n]o question will be considered [on appeal] unless it is stated in the statement of questions involved or is *fairly suggested thereby*." (emphasis added).)  Claimant's brief provides:

> Although [Claimant's] short-term medical leave had expired, [Claimant] was not released to return to work by his doctor and was undergoing a review and discussion with the insurance company and his doctor about the possibility of being put on to their [sic] long-term medical leave program.  [Claimant] supplied at the hearing a statement from his doctor that he had NOT been released to return to work and it was her belief that returning to the work situation at [Employer] would be detrimental to [Claimant's] wellbeing.

(Pet'r's Br. at 5.)  The Board concluded, however, that Claimant did not produce sufficient credible evidence to establish that he had adequate health reasons to resign and that he failed to take reasonable measures to preserve his employment. We agree with the Board.

As noted above, at the time Claimant was expected to return to work, Claimant had several options available to him to preserve his employment, including filing for long-term medical disability, applying for a different position with Employer, or simply responding to the Director's email by Friday, July 19, 2019.  Claimant failed to pursue any of those options, and he did not provide the Director any medical

---

[9] The question presented section of Claimant's brief describes the issue, in full, as follows: "Why the [Referee] refused to acknowledge [Claimant's] position that he was terminated while he was still on medical leave and that he had not voluntarily resigned his position. The [Board] did not address this question."  (Pet'r's Br. at 4.)

documentation certifying his ongoing medical condition, instead resigning his position.  As a result, we cannot conclude that Claimant exhausted all available options to preserve his employment relationship.  *Porco v. Unemployment Comp. Bd. of Rev.*, 828 A.2d 426, 428-29 (Pa. Cmwlth. 2003).

Accordingly, we affirm the order of the Board.


P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

George B. Yancura,  :
                   Petitioner  :
                     :
         v.  :    No. 1869 C.D. 2019
                     :
Unemployment Compensation  :
Board of Review,  :
              Respondent  :

# **O R D E R**

AND NOW, this 5th day of March, 2021, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

 

_____
P. KEVIN BROBSON, Judge